RALPH WILLIAMS HARDIN v. THE AMERICAN MUTUAL FIRE INSURANCE COMPANY.

(Filed 17 January 1964.)

**1. Pleadings § 12—**

Whether allegations set forth as the basis for a plea in bar to plaintiff's entire cause of action are sufficient for that purpose may be tested by demurrer. G.S. 1-141.

**2. Appeal and Error § 3—**

A judgment sustaining plaintiff's demurrer to defendant's plea in bar affects a substantial right of defendant and is appealable, G.S. 1-277, Rule of Practice in the Supreme Court No. 4 being applicable only when the demurrer is overruled.

**3. Insurance § 3—**

Where the language of a policy is plain and unambiguous it must be given its plain and commonly accepted meaning, and there is no room for construction.

**4. Insurance § 47.1—**

The fact that the carrier of liability insurance on the other vehicle involved in the collision becomes insolvent subsequent to the collision does not constitute such other vehicle an uninsured vehicle within the meaning of a personal injury policy protecting insured against damages inflicted as the result of the negligent operation of an uninsured vehicle. G.S. 20-279.21.

APPEAL by defendant from *Gambill, J.,* April 1963 Civil Session of DAVIDSON.

Civil action upon an automobile liability policy of insurance heard upon a demurrer to defendant's Third Further Answer and Defense alleged in its answer as a complete bar to any liability in this action.

From a judgment sustaining the demurrer, defendant appeals.

*Walser & Brinkley by Walter F. Brinkley for defendant appellant.*
*Charles F. Lambeth, Jr., for plaintiff appellee.*

PARKER, J. Plaintiff commenced this action by the issuance of summons on 4 January 1963, which was served on defendant on 10 January 1963. In his complaint he alleges in substance:

On 18 November 1961 he was injured while riding as a passenger in his Ford automobile, which at the time was being driven by Ruby Blackwell, when his automobile was involved in a collision in the intersection of U. S. Highway 74 and North Carolina Highway 226 in the town of Shelby, North Carolina, with a Plymouth automobile which was registered in South Carolina and was being operated by Ronnie Lee Bradley. Specific acts of negligence on the part of Bradley are alleged as the proximate cause of the collision and of personal injuries sustained by plaintiff in the collision. The particular personal injuries sustained by plaintiff are alleged in detail.

On or about 11 October 1961 the defendant insurance company had issued to plaintiff an automobile liability policy No. ACF 43 34 11, under the terms of which plaintiff was the named insured, which policy was in effect at the time of the collision, covering the Ford automobile in which plaintiff was riding. This policy of automobile liabilty insurance has attached to it an endorsement effective 11 October 1961, and forming a part thereof, entitled "PROTECTION AGAINST UNINSURED MOTORISTS INSURANCE." A copy of this endorsement is

attached to the complaint and marked Exhibit A. Its provisions rele-
vant to this appeal are as follows:

"In consideration of the payment of the premium [$2.00] for
this endorsement, the company agrees with the named insured,
subject to the limits of liability, exclusions, conditions and other
terms of this endorsement and to the applicable terms of the
policy:

## INSURING AGREEMENTS

"I. DAMAGES FOR BODILY INJURY AND PROPERTY
DAMAGE CAUSED BY UNINSURED AUTOMOBILES: To
pay all sums which the insured or his legal representative shall be
legally entitled to recover as damages from the owner or operator
of an uninsured automobile because of:

"(a) bodily injury, sickness or disease, including death result-
ing therefrom, hereinafter called 'bodily injury,' sustained by the
insured;

"(b) [Relates to property damage and is not applicable.]
caused by accident and arising out of the ownership, maintenance
or use of such uninsured automobile.

*            *            *

"II. DEFINITIONS.

*            *            *

"(c) UNINSURED AUTOMOBILE. The term 'uninsured au-
tomobile' means:

"(1) with respect to damages for bodily injury and property
damage an automobile with respect to the ownership, mainten-
ance or use of which there is, in the amounts specified in the
North Carolina Motor Vehicle Safety and Financial Responsibili-
ty Act, neither (i) in cash or securities on file with the North
Carolina Commissioner of Motor Vehicles nor (ii) a bodily injury
and property damage liability bond or insurance policy, applic-
able to the accident with respect to any person or organization
legally responsible for the use of such automobile, or * * *."

Ronnie Lee Bradley was an uninsured motorist, and the automobile
he was operating at the time of the collision resulting in injuries to
plaintiff was an uninsured automobile within the meaning of the pro-
visions of the uninsured motorists endorsement made a part of the
policy issued by the defendant insurance company to plaintiff, and
that under the terms of this endorsement plaintiff is entitled to recover

the sum of $5,000 as the insured's portion of the damages he sustained. He duly notified defendant of his claim, but it has refused and still refuses to pay it, and the defendant is now indebted to him in the sum of $5,000 with interest.

Defendant in its answer admits the allegations of the complaint relating to the residence of plaintiff, its existence as an insurance corporation, and the ownership of the automobiles, but it denies that plaintiff was injured by the negligence of Ronnie Lee Bradley. Defendant further admits that it issued to plaintiff the automobile liability insurance policy described in the complaint, with an endorsement attached thereto and made a part thereof, as set forth in plaintiff's exhibit attached to the complaint, providing protection against uninsured motorists, and that said policy with its endorsement was in effect on 18 November 1961, but it denies that the automobile operated by Ronnie Lee Bradley was an uninsured automobile within the provisions of the endorsement attached to its policy. It further admits receipt of notice of claim from plaintiff and its denial of any liability.

For a First Further Answer and Defense, it pleads contributory negligence of plaintiff as a bar to recovery. For a Second Further Answer and Defense, it pleads its right to have Ronnie Lee Bradley and the owner of the automobile he was driving at the time of the collision made defendants in this action.

For a Third Further Answer and Defense, it alleges that at the time of the collision in which plaintiff was injured, a policy of automobile liability insurance insuring Ronnie Lee Bradley against liability for damages caused by the negligent operation of the automobile which he was driving at that time had been theretofore issued by the Guaranty Insurance Exchange. This policy had been issued to Richard Bradley, the father of Ronnie Lee Bradley, covered the Plymouth automobile which Ronnie Lee Bradley was operating at the time of the collision, and was in full force and effect at such time. This policy provided for the payment of damages in an amount equal to or in excess of the amount specified in the North Carolina Motor Vehicle Safety and Financial Responsibility Act and qualified under the provisions of Paragraph II (c) (1) (i) and (ii) of the Insuring Agreements of the endorsement forming a part of the automobile liability insurance policy as set forth in Exhibit A as a "bodily injury and property damage liability bond or insurance policy, applicable to the accident with respect to any person or organization legally responsible for the use of such automobile."

The Guaranty Insurance Exchange became insolvent, and on 29 August 1962 was placed in receivership in the State of Kansas where its

principal office was located. It was further placed in receivership in the State of South Carolina on 4 September 1962. Subsequent to 18 November 1961 and until the date of its insolvency, the Guaranty Insurance Exchange engaged in the normal course of its business, including the investigation, determination and settlement of claims against it, and the defense of any claims which were determined to be unfounded. The Guaranty Insurance Exchange investigated the claim of plaintiff. The plaintiff instituted suit against Ronnie Lee Bradley and Richard Bradley, and the Guaranty Insurance Exchange employed counsel to defend this suit.

It is informed and believes that this action is still pending in the superior court of Davidson County, but that counsel employed by the Guaranty Insurance Company have withdrawn from the defense, and that the Guaranty Insurance Exchange is not now in a position to provide a defense for its insureds or to pay at this time any judgment which may be recovered against them to the extent provided by the Motor Vehicle Safety and Financial Responsibility Act of North Carolina.

There was at the time of the occurrence of the accident upon which plaintiff's claim is based a bodily injury and property damage liability insurance policy in effect on the automobile which collided with the automobile of the plaintiff, and the subsequent insolvency of the company which issued this policy does not invoke the coverage of an uninsured motorists endorsement issued by defendant to plaintiff, and the defendant pleads the existence of this automobile liability policy issued by the Guaranty Insurance Exchange covering the automobile which Ronnie Lee Bradley was driving at the time of the accident as a complete defense and plea in bar to plaintiff's entire action and to any liability of the defendant in this action.

Defendant alleges as a Fourth Further Answer and Defense that the extent of the insolvency of Guaranty Insurance Exchange is unknown to it, but it is advised and believes it has substantial assets which are available to creditors, and its affairs are being administered by a receiver of a court of competent jurisdiction. That even if it should be held that the endorsement forming a part of the policy of automobile liability insurance issued by it to plaintiff obligates it to plaintiff in this action, which it denies, it is impossible to determine its amount of liability until a determination has been made of assets of Guaranty Insurance Exchange available for claims of plaintiff in this action. Plaintiff has not recovered a judgment against Ronnie Lee Bradley or Richard Bradley and has not pursued his claim against Guaranty Insurance Exchange. Its liability would not accrue, if there is any, until

plaintiff has exhausted all his remedies against Guaranty Insurance Exchange, and it has been finally determined that his claim against this company will not be paid in full by the receiver of Guaranty Insurance Exchange.

Defendant's Third Further Answer and Defense is a plea in bar that extends to plaintiff's entire cause of action and denies his right to maintain it, and if established, will destroy his action. *Brown v. Clement Co.,* 217 N.C. 47, 6 S.E. 2d 842. Whether the allegations therein contained are sufficient as such a plea in bar can be tested by a demurrer. G.S. 1-141; *Bumgardner v. Groover,* 245 N.C. 17, 95 S.E. 2d 101. The judgment sustaining plaintiff's demurrer to this plea in bar of defendant affects a substantial right of the defendant, and the defendant may appeal therefrom. G.S. 1-277; *Mercer v. Hilliard,* 249 N.C. 725, 107 S.E. 2d 554. As pointed out in the *Mercer* case, Rule 4 (a), Rules of Practice in the Supreme Court, 254 N.C. 783, 785, when otherwise applicable, limits the right of immediate appeal only in instances where the demurrer is overruled.

The 1961 General Assembly enacted "an act to amend G.S. 20-279.21 defining motor vehicle liability insurance policy for financial responsibility purposes so as to include protection against uninsured motorists." This act became effective 1 August 1961. 1961 Session Laws, Chapter 640. The part of this act revelant on this appeal is the new subdivision added to G.S. 20-279.21, which is codified as G.S. 20-279.21 (b) (3), and reads as follows:

> "3. No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Subsection (c) of paragraph 20-279.5, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. Such provisions shall include coverage for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of injury to or destruction of the property of such insured, with a limit in the aggregate for all insureds in any one accident of five thousand dol-

lars ($5,000.00) and subject, for each insured, to an exclusion of the first one hundred dollars ($100.00) of such damages. The coverage required under this Section shall not be applicable where any insured named in the policy shall reject the coverage."

Pursuant to this amendment to our Motor Vehicle Safety and Financial Responsibility Act, the motor vehicle liability policy issued by defendant to plaintiff on or about 11 October 1961 has an endorsement forming a part of the policy designated as "PROTECTION AGAINST UNINSURED MOTORISTS INSURANCE."

Our Motor Vehicle Safety and Financial Responsibility Act defines a "motor vehicle liability policy," G.S. 20-279.21, but it does not define an uninsured motor vehicle or an uninsured motorist. The endorsement on the motor vehicle liability policy issued by defendant to plaintiff clearly defines an "uninsured automobile" as follows:

"The term 'uninsured automobile' means:

"(1) with respect to damages for bodily injury and property damage an automobile with respect to the ownership, maintenance or use of which there is, in the amounts specified in the North Carolina Motor Vehicle Safety and Financial Responsibility Act, neither (i) in cash or securities on file with the North Carolina Commissioner of Motor Vehicles nor (ii) a bodily injury and property damage liability bond or insurance policy, applicable to the accident with respect to any person or organization legally responsible for the use of such automobile, or * * *."

It seems clear that any cause of action which plaintiff may have acquired against Ronnie Lee Bradley and his father Richard Bradley, either or both, as a result of the collision in question arose at the time of the collision, to wit, 18 November 1961, and any right which he may claim against defendant here under the laws of this State and under the uninsured motorists insurance coverage of the policy in the instant case must be determined by the facts existing at the time of the collision, 18 November 1961. *Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508; *Adams v. Mills*, 286 U.S. 397, 76 L. Ed. 1184; *Federal Insurance Co. v. Speight*, 220 F. Supp. 90; 1 Am. Jur. 2d, Actions, sec. 88. This statement of law is supported by the provisions of G.S. 20-279.21 (f) (1), which is a part of the same statute requiring the issuance of uninsured motorists coverage as a part of each policy of automobile liability insurance written in the State of North Carolina subsequent to 1 August 1961, and provides as follows:

"(f)   Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

"(1)   The liability of the insurance carrier with respect to the insurance required by this article shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs * * *."

Plaintiff contends that the uninsured motorists coverage of the policy here defines with particularity an uninsured automobile, but it does not have "a provision to the effect that an uninsured automobile shall not include an automobile which has liability coverage by an insurance company at the time of an accident, which insurance company subsequently becomes insolvent," although the endorsement on its policy excludes from the term "uninsured automobile" a number of automobiles, for instance, an automobile defined as an "insured automobile," an automobile owned by the named insured or by any resident of the same household, an automobile owned by the United States, Canada, a state, a political subdivision of any such government or any agency of the foregoing, that the definition of an "uninsured automobile" is ambiguous, and consequently construing the endorsement on the policy liberally in his favor it should be interpreted to mean that at the time of the collision the Bradley automobile was an "uninsured automobile." Plaintiff's contention is ingenious, but not convincing. The definition of an "uninsured automobile" set forth in the endorsement on the policy here is plain and unambiguous, there is no occasion for construction, and the language used must be given its plain and commonly accepted meaning. *Johnson v. Casualty Co.*, 234 N.C. 25, 65 S.E. 2d 347; 7 Am. Jur. 2d, Automobile Insurance, sec. 2, p. 294.

For the purposes of the demurrer, accepting the allegations of fact of defendant's Third Further Answer and Defense as true, it seems clear that at the time of the collision here the Bradley automobile was an "insured automobile" covered by an automobile liability insurance policy issued by Guaranty Insurance Exchange, which policy at the time was in full force and effect, providing for the payment of damages proximately caused by its negligent operation by Ronnie Lee Bradley, in an amount equal to or in excess of the amount specified in our Motor Vehicle Safety and Financial Responsibility Act. It is further admitted by the demurrer that plaintiff instituted suit against Ronnie Lee Bradley and his father Richard Bradley, and that Guaranty Insurance Exchange employed counsel to defend this suit.

It is our opinion, and we so hold, that as the demurrer admits that the Bradley automobile was an "insured automobile" as alleged in the

Third Further Answer and Defense at the time of the collision here, it did not become an "uninsured automobile" under the language of the statutes of this State and the defendant's policy provisions so as to extend the coverage of the provisions of the endorsement on the policy here providing "PROTECTION AGAINST UNINSURED MOTOR-ISTS INSURANCE" to plaintiff for injuries sustained in a collision on 18 November 1961, by reason of the fact that Guaranty Insurance Exchange, which did not deny coverage under its policy of automobile liability insurance covering the negligent operation of the Bradley automobile, went or was thrown into receivership on 29 August 1962, over nine months subsequent to the collision in which plaintiff was injured, and if the facts alleged in defendant's Third Further Answer and Defense are established, the plea in bar therein is good.

To date, so far as our investigation and the briefs of counsel disclose, comparatively few cases involving uninsured motorists have received the attention of the courts outside of New York, and these cases have presented a variety of questions relating to different phases of such coverage. Annotation 79 A.L.R. 2d 1252, "Rights and liabilities under 'uninsured motorists' coverage."

We are fortified in the conclusion we have reached here by the fact that the following cases, which are the only cases having a substantially similar factual situation that we have found in our research and in studying the briefs of counsel, have reached a similar conclusion as we have: *Uline v. Motor Vehicle Accident Indem. Corp.,* 213 N.Y.S. 2d 871 (10 April 1961); *Federal Insurance Co. v. Speight, supra* (2 August 1963); *Fidelity Insurance Co. v. Crosland, County Court for Richland County, South Carolina,* which is apparently not reported but is set forth in the opinion in *Federal Insurance Co. v. Speight;* and by what is said in 7 Am. Jur. 2d, Automobile Insurance, sec. 136, "What constituted an 'uninsured' automobile or motorist."

The General Assembly in the future may feel that our Motor Vehicle Safety and Financial Responsibility Act should be amended so as to provide coverage under the circumstances of the instant case. However, if the coverage is to be extended or broadened, it is for the General Assembly to do so, and not the courts.

The judgment sustaining the demurrer below is
Reversed.