## Levy et al., Appellants, *v.* Keystone Insurance Company.

Argued September 14, 1966.   Before WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (ERVIN, P. J., absent).

*Samuel Smith,* with him *Stanley A. Levine,* and *Tabas & Smith,* for appellants.

*Stephen M. Feldman,* with him *Joseph G. Feldman,* and *Feldman and Feldman,* for appellant.

*John S. Kokonos,* for appellee.

OPINION BY MONTGOMERY, J., November 17, 1966:

These two cases, both involving the identical legal issue, were consolidated for purposes of argument and will be disposed of as one in this opinion. The almost identical fact situations are as follows:

Appellant Alexander Levy and his passenger-appellant Joseph Messina were involved in an automobile accident with Louis R. Silver in Philadelphia on December 3, 1964. Silver, at that time, was insured by the Palmyra General Insurance Company. Suit was instituted by appellants against Silver in the Court of Common Pleas No. 6 of Philadelphia County during its March Term, 1965. Palmyra entered an appearance on behalf of the defendant through its counsel, who represented the insured throughout all pretrial procedures. On February 18, 1966, Palmyra was dissolved by decree of the Court of Common Pleas of Dauphin County, whereupon its counsel withdrew from the case. Appellants then sought relief from appellee Keystone Insurance Company under the provision in appellant Levy's policy for protection against uninsured motorists. When appellants sought to compel Keystone to submit to arbitration it declined, claiming that Silver was not an uninsured motorist under the terms of the policy, and that Palmyra had not denied coverage. A rule to show cause why Keystone should not submit to arbitration was dismissed by the Honorable THEODORE L. REIMEL of Court of Common Pleas No. 6 of Philadelphia County. Appellants Levy and Messina appeal from this order.

In the companion case appellant Bruce Pattani was injured on January 3, 1965, in an accident involving his automobile and one driven by Miss Reversa Taylor. At the time of the accident Miss Taylor was insured under a policy issued by the Wissahickon Mutual Casualty Company. The appellant Pattani filed a suit in trespass in the County Court of Philadelphia as of March Term, 1965, against Taylor, whereupon Wissahickon caused an appearance to be entered on her behalf and its counsel represented her up to and during a compulsory arbitration of the case on February 21, 1966, which resulted in a finding for appellant in the amount of $719. No appeal was taken from this arbitration award and it became a final judgment.

On or about March 18, 1966, Wissahickon, no longer financially responsible, went into receivership. Appellant then availed himself of his uninsured motorist protection with Keystone and tried to compel it to arbitrate his loss. Appellant Pattani appeals from an order by the Honorable JOSEPH E. GOLD dismissing his petition to compel arbitration.

Under the Act of August 14, 1963, P. L. 909, §1, 40 P.S. §2000, all insurance companies issuing automobile liability insurance policies within the Commonwealth are required to provide as part of their insurance package, coverage for the damage caused by uninsured owners and operators of motor vehicles. If this additional coverage is not desired it must be expressly rejected by all insureds in writing. This statute does not define uninsured motorists. The contracts under which both appellants were insured contained the identical uninsured motorist clause, whereby the carriers agree, "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile. . . ." An uninsured automobile is defined in both policies as: "(a) an au-

tomobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible . . . or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder . . . (b) a hit-and-run automobile; . . ."

The issue now before this Court is whether the uninsured motorist provision of these automobile policies extend to those covered under the policy when at the time of the accident the person causing the accident was covered by liability insurance which subsequently lapsed because of the insolvency of the carrier.

Appellants contend that under the terms of their policies they were entitled to invoke the uninsured motorist protection because Palmyra and Wissahickon denied coverage as a result of being in receivership or dissolved, and (2) the receivership or liquidation should be related back to the time of the accident to determine whether or not the motorist was insured.

Any ambiguity in a contract of insurance is to be construed most strongly in favor of the insured and against the insurer. *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company,* 385 Pa. 394, 123 A. 2d 413 (1956); *Vowinckel v. Donegal Mutual Insurance Company,* 201 Pa. Superior Ct. 229, 191 A. 2d 706 (1963); *Allen v. Insurance Company of North America,* 175 Pa. Superior Ct. 281, 104 A. 2d 191 (1954). Furthermore, it would seem that in light of the reasons behind uninsured motorist coverage and especially the legislative concern which resulted in the Act of 1963, a liberal construction should be given to

any such provision in an insurance policy. Nevertheless, we find no ambiguity in these contracts and we cannot, within the realm of judicial reason expand the definition of an uninsured motorist to the facts of these cases. Unambiguous language of a policy cannot be construed to mean other than what it says. *Judge v. Prudential Insurance Company of America,* 321 Pa. 454, 184 A. 543 (1936).

Denial of coverage means a rejection of the policyholder as an insured and a refusal to accord him the protection he contracted for. It does not mean the inability to collect the full amount of the damages from the insurer. Webster's Third New International Dictionary, page 603 (1963), defines "deny" as meaning, "to refuse to recognize or acknowledge; withhold acknowledgment from; disclaim connection with, allegiance to, or responsibility to or for . . .". This definition contemplates affirmative action by the insurance company. It cannot be concluded that a decree of liquidation by a court of competent jurisdiction or the appointment of a receiver is affirmative action by the company denying coverage. A denial of coverage usually arises where there is coverage, but because of some action on the part of the insured the company refused to respond. This refusal could be for lack of cooperation by the insured, fraud perpetrated by the insured on the company, or serving late notice of the accident, to mention a few. There was no denial of coverage in these cases.

In the absence of a denial of coverage by the insurers, recovery against the appellee must depend on the meaning of the words, "uninsured automobile". The wording of the present policies clearly indicates, that the time of the accident determines the uninsured status of the policyholders. Appellants' attempt to relate the liquidation back to the time of the accident would subject the appellee to a risk it did not undertake.

These policies specifically state that an uninsured automobile is one that has "no bodily injury liability bond or insurance policy applicable *at the time of the accident.*" (Emphasis supplied) This conclusion is in line with cases decided in other jurisdictions. See *Swaringin v. Allstate Insurance Company,* 399 S.W. 2d 131 (Mo. 1966); *Hardin v. American Mutual Fire Ins. Co.,* 261 N.C. 67, 134 S.E. 2d 142 (1964); *Federal Insurance Company v. Speight,* 220 F. Supp. 90 (E.D. S.C. 1963).

The Court is well aware of the detriment suffered by the innocent appellants in this decision. Any broadening of the coverage provided by such insurance must, however, be the result of legislation or contractual bargaining, and not by this Court.

Judgments affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

It is true that the Palmyra and Wissahickon Companies defaulted on their obligations because of insolvency, and not by choice. But that fact should not be controlling here. When an insurer fails to defend a claim or to satisfy a judgment against its insured, whether voluntarily or involuntarily, it "denies coverage" to him in the only meaningful sense of that term. It fails to accord him the protection he contracted for.

Two appellate courts have been called upon to construe language identical to that contained in the Keystone policies. Both have held that an effective "denial of coverage" results where insolvency prevents an insurer from paying claims against its policyholders. *State Farm Mutual Automobile Ins. Co. v. Brower,* 204 Va. 887, 134 S.E. 2d 277 (1964); *North River Ins. Co. v. Gibson,* 244 S.C. 393, 137 S.E. 2d 264 (1964). I believe that we should adopt a similar construction here.

I would reverse.