**Robert Lee BOLLINGER, Appellant,**

**v.**

**The TRAVELERS INDEMNITY COMPANY, a Corporation, Respondent.**

**No. 24970.**

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Bernard Passer, Herman Epstein, Kansas City, for appellant.

James W. Benjamin, Rogers, Field & Gentry, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

In this case the trial court entered judgment in favor of defendant, The Travelers Indemnity Company, and plaintiff appealed.

Plaintiff alleged in his petition that on the 4th day of April, 1964, defendant issued and delivered to him its policy of insurance No. 9091076; that by the terms of said policy defendant promised that it would indemnify plaintiff for all bodily injuries and medical care to the extent of $10,000, if said injuries were caused to plaintiff by a person operating an "uninsured" automobile.

Plaintiff further alleged that on the 2nd day of May, 1964, the automobile he was driving was violently struck by an automobile being operated by one Leo Cournoyer, thereby causing plaintiff to suffer permanent injuries in addition to substantial medical expense.

Plaintiff further alleged that he was not informed and did not know the said Leo Cournoyer or whether his automobile was insured at the time of the aforementioned accident, but that plaintiff also states that he was informed that the said Leo Cournoyer did have a liability policy with the Crown Insurance Company of West Virginia.

Plaintiff further states that on the 25th day of March, 1964, the Commissioner of Insurance of the State of West Virginia declared the Crown Insurance Company insolvent; that on March 31, 1964, a petition was filed by said Insurance Commissioner in the Circuit Court of Cabell County, West Virginia to liquidate the Crown Insurance Company.

Plaintiff attached and made a part of his petition the insurance policy sued on. He also included as a part of his petition the Declaration of Insolvency as made by the Commissioner of West Virginia and other documents referring to the aforementioned declaration and the factual findings of the Circuit Court of Cabell County, West Virginia, in the proceedings to liquidate the business of the Crown Insurance Company.

The defendant, after filing his answer, filed a Motion for Summary Judgment, after a pre-trial conference had been held in the case on the ground that there was no substantial remaining issue as to the fact that there was an insurance policy (issued by the Crown Insurance Company) applicable to the automobile and driver in the collision with the plaintiff at the time of the accident. It was stipulated at the pre-trial conference "that Mr. Cournoyer (the man whose automobile collided with the plaintiff) had a policy of liability insurance with the Crown Insurance Company".

As stated, plaintiff alleged that he was injured on May 2d, 1964, when involved in an accident with an automobile being driven by Leo Cournoyer. It was not until May 7, 1964, that the Circuit Court of Cabell County, West Virginia, ordered that "all outstanding bonds, policies and other insurance obligations and all other subsisting contracts and obligations of the Crown Insurance Company, a West Virginia Corporation, terminate and all liability thereunder cease and be fixed at twelve o'clock midnight (Daylight Saving

Time) on the 20th day of May, 1964, and notice thereof shall be given by publication and by mailing as hereinabove set forth to each of the policyholders * * *."

The summary judgment in favor of the defendant was based on the ground that there was no genuine issue of fact that, at the time of the accident, there was an insurance policy applicable to Leo Cournoyer and he was, therefore, not "uninsured" at the time of the accident. The trial judge clearly expressed his reason for this ruling as follows:

"He (Cournoyer) had a policy of insurance which was with a company which was, at the time, recognized both by the State of Missouri and the State of West Virginia and the uninsured motorist clause does not say, 'A motorist insured by a *solvent* insurance company.'" (Emphasis ours.)

Under the policy sued on an uninsured automobile is (a) "an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization responsible for the use of such automobile."

The undisputed facts show that on March 25, 1964, the Insurance Commissioner of the State of West Virginia filed a petition in the Circuit Court of Cabell County, West Virginia, in which he alleges that the Crown Insurance Company "hereinafter referred to as the Respondent" was incorporated under the laws of West Virginia and has qualified to do business in the State of Missouri and the State of Illinois. He further alleges that he has made an examination of the affairs of the Respondent as of the 31st day of December, 1963, and states that his examination from that date to the date of the petition discloses that the continuance of the business of the Respondent Insurance Company is hazardous to the *policyholders* and to the public and that said Commissioner, therefore, makes application "for an order authorizing the rehabilitation

of said Respondent, and if it be determined that it is not practical to rehabilitate said Respondent, then to liquidate said Respondent."

An order to show cause was issued, and on May 7, 1964, the Circuit Court of Cabell County, West Virginia entered its order and among other things it was:

"ORDERED and DECREED that except as hereunder provided all outstanding bonds, policies and other insurance obligations and all other subsisting contracts and other obligations of Crown Insurance Company, a West Virginia corporation, terminate and all liability thereunder cease and be fixed as of twelve o'clock midnight (Daylight Saving Time) on the 20th day of May, 1964, and notice thereof shall be given by publication and by mailing as hereinabove set forth to each of the policyholders within six weeks from the date of entry of this order and such notice shall be sufficient notice to such persons and other persons interested."

Thus it is clear that the policy which Cournoyer held in the Crown Insurance Company was in effect until May 20, 1964, whereas the accident occurred eighteen days prior thereto, to-wit: on May 2d, 1964.

The ruling of the trial court is supported by the authorities in Missouri as follows:

In Swearingin v. Allstate Insurance Company, (Mo.App.) 399 S.W.2d 131, the court was dealing with the same question and same definition of the term "uninsured automobile" as in the case at bar. In that case the insurance company was in financial difficulty; however, there was no official order or judgment until after the accident. The court, after holding that the definition was plain and unambiguous and that there was no occasion for construction, stated, 1. c. 134:

"By the second point, plaintiff urges us to find that the Missouri Union policy was a nullity because that insurer was insolvent at the time of plaintiff's injury. The burden was on plaintiff to show that

**58**

Patricia Adams' automobile was uninsured at the time of the accident. 7 Am. Jur.2d, Automobile Insurance § 137. He did not carry this burden merely by showing that Missouri Union was in some financial difficulty * * *."

Also in Seabaugh v. Sisk, (Mo.App.) 413 S.W.2d 602, the court was faced with a similar situation and with the same insurance company involved in this case, i. e., Crown Insurance Company of West Virginia. The court in that case also held that the uninsured motorists coverage did not extend to the insured who collided with an operator of another vehicle who was insured at the time of the accident but whose coverage later lapsed due to his insurance company's failure. The court stated, 1. c. 610:

> "Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties * * *. (Cases cited.) "

Plaintiff cites no Missouri authority in support of his argument and the only cases cited from any other jurisdiction involve a different legal question; for example, in McCaffery v. St. Paul Fire & Marine Insurance Company, (N.H.Sup.) 236 A.2d 490, the court interpreted the New Hampshire statute which *required* that uninsured motorist coverage be a standard feature of every policy of liability automobile insurance. The court then concluded that it was part of the legislative purpose to extend coverage in the factual situation presented in that case.

The Tennessee case cited by plaintiff, State ex rel. Williams v. Cosmopolitan Insurance Company, 217 Tenn. 8, 394 S.W.2d 643, did not involve the question here at issue, but involved whether an insurance agent had a right to set off premiums on policies after he knew that an insurance company, in which he had written coverage for his clientele, had become insolvent. The court upheld the right of the agent to rewrite the policies in another company because of the insolvency and to take credit for the unearned premiums against claims of the insolvent carrier.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.