# Richmond

## State Farm Mutual Automobile Insurance Company v. Clifford C. Brower.

January 20, 1964.

Record No. 5690.

Present, All the Justices.

The opinion states the case.

*W. Worth Martin* and *Phillips M. Dowding* (*Martin & Dowding,* on brief), for the plaintiff in error.

*Edward A. Marks, Jr.* (*Frank H. Pitchford; Sands, Anderson, Marks & Clarke; Pitchford & Sarfan,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The question for decision in this case is whether the appellant, State Farm Mutual Automobile Insurance Company, is liable to the appellee, Clifford C. Brower, its policyholder, under the "uninsured motor vehicle" provisions of Virginia Code § 38.1-381.

On June 19, 1960, Brower was injured when his automobile driven by him was struck by an automobile being driven by Louis J. Mazza, in York county, Virginia. Afterwards, on January 6, 1961, Brower sued Mazza for damages, and on July 11, 1961, recovered a judgment against him for $2,500 with interest and costs. In that action a copy of Brower's motion for judgment was served on his own insurance carrier, State Farm, pursuant to subsection (e)(1) of § 38.1-381, and State Farm filed pleadings for Mazza but under a reservation of rights.

Brower's judgment against Mazza was not paid and in August 1961 Brower brought the present action against State Farm on the ground that Mazza was an uninsured motorist and State Farm in its policy issued to Brower had undertaken to pay the amount he was so entitled to recover from Mazza.

A jury was waived and all questions of law and fact were submitted to the trial court. The evidence, which was without any material conflict, consisted of the deposition of Mazza, stipulations of facts and exhibits, and upon consideration thereof the court, for reasons stated in a written opinion, granted judgment against State Farm for $2,500 with interest and costs, which is now before us on appeal.

Section 38.1-381(b) provides that in all bodily injury and property damage liability insurance policies the insurer shall undertake to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of "an uninsured motor vehicle," within prescribed limits. Subsection (c) of § 38.1-381 provides in pertinent part:

"* * the term 'uninsured motor vehicle' means a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1-1(8), as amended from time to time, or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder, * *."

At the time of the accident Mazza was a resident of New York but was in military service and stationed in Virginia. His automobile

was not registered in Virginia but was covered by a liability insurance policy issued by National Automobile Insurance Company while Mazza was stationed in Alabama. National was a Delaware corporation not licensed or authorized to do business in Virginia. The trial court found that this policy complied with the Virginia requirements as to coverage and was in force at the time of the accident. It also found that Mazza had complied with the terms of the policy with respect to notice and otherwise, but that National made no appearance and offered no defense to the action brought by Brower against Mazza.

The record shows that on September 6, 1960, four months before Brower instituted his action against Mazza, the Insurance Commissioner of the State of Delaware entered an order reciting that after a hearing held on April 11, 1960, and a subsequent examination of the affairs of the National Automobile Insurance Company, which had its home office in Delaware, it appeared that said company "is hopelessly insolvent," and ordering that its certificate of authority to do business be thereby revoked. Thereupon the Attorney General of Delaware filed in the Court of Chancery of the State of Delaware for New Castle County, a complaint setting forth the action of the Insurance Commissioner and praying, *inter alia*, that a receiver be appointed to take charge and close up the affairs of the company, and that it be restrained from doing business.

Thereafter, on September 14, 1960, the Delaware court entered an order which set forth that the National Automobile Insurance Company consented to the appointment of a receiver. It appointed a receiver and directed him to take charge of and close up the business and affairs of said company, with power to prosecute and defend all claims or suits, and to compromise and settle all claims against the company or its insured. Neither the company nor the receiver appeared or defended the suit of Brower against Mazza, and neither has paid Brower's judgment against Mazza or any part thereof. Mazza testified that the receiver had advised him to file proof of claim and he had done so.

Section 38.1-381(f) provides that any insurer paying a claim under the uninsured motorist provision "shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made; * *."

State Farm contends that it is not liable to its insured, Brower, under the uninsured motorist provision of its policy, whereby it

agreed to pay to Brower all sums he was legally entitled to recover as damages from Mazza, ascertained to be $2,500 with interest and costs as aforesaid. It says this is so because Mazza's car was not an uninsured motor vehicle as defined by § 38.1-381(c), in that at the time of the accident there was (i) bodily injury liability insurance and property damage liability insurance in the statutory amounts on Mazza's car; and (ii) the insurance company writing the same had not "denie[d] coverage" thereunder.

We do not decide in this case whether an insurance policy in a defunct, hopelessly insolvent insurance company is such "bodily injury liability insurance and property damage liability insurance" as will prevent the automobile it purports to cover from being "an uninsured motor vehicle" within the meaning of § 38.1-381(c)(i).

■ We are convinced, however, and so decide, that the Mazza automobile was "an uninsured motor vehicle" under subsection (c)(ii) of that section, because under the facts of this case there has been an effective denial of coverage by the insurance company which wrote the policy. By the terms of that policy National specifically agreed:

(1) "To pay on behalf of the insured [Mazza] all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * sustained by any person caused by accident and arising out of the ownership, maintenance or use of the automobile"; and to

(2) "Defend any suit against the insured alleging such injury * *."

National, although duly notified by Mazza of Brower's suit against him, did not, nor did its receiver, defend the suit or even appear therein, nor has either paid any part of the judgment which its insured has become obligated to pay.

State Farm argues that neither National nor any of its receivers "have made an express denial of coverage" to Mazza and hence that Mazza's automobile was not an uninsured vehicle. But § 38.1-381-(c)(ii) does not say that the denial must be express. It says only that the automobile is an uninsured vehicle if the insurance company "denies coverage." There is nothing in the letter of the statute nor, as we believe, in the spirit and purpose of the statute, that requires the denial to be expressed. Denial of coverage clearly may be as effectively made by the conduct of the insurer as by its spoken or written word.

There is no apparent reason why the words in the phrase "denies

coverage" should not be given their natural and commonly understood meaning in the context in which they are used.

"To deny means to withhold, to refuse to grant." Ballentine's Law Dict., p. 360. A person in distress is denied help when one who hears his cries says nothing but walks away.

"Coverage" in the field of insurance means "protection by insurance policy: inclusion within the scope of a protective or beneficial plan (coverage against liability claims)." Webster's Third New Int. Dict., pp. 524-5.

An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give. Here National has failed to give Mazza protection against the damages he has "become legally obligated to pay" which National specifically promised to pay for him. Its failure to appear, to defend and to pay was a denial of coverage within the meaning of § 38.1-381(c)(ii), and Mazza's car was therefore "an uninsured motor vehicle."

State Farm has cited the opinions of two New York trial courts in support of its argument: *Berman* v. *Travelers Indemnity Co.*, 11 Misc. 2d 291, 171 N.Y.S.2d 869, and *Uline* v. *Motor Vehicle Acci. Indemnification Corp.*, 28 Misc. 2d 1002, 213 N.Y.S.2d 871. No uninsured motorist legislation was involved in the former. The *Uline* case involved the New York uninsured motorist laws which classed as uninsured a motor vehicle which fell within any of seven specific categories, one of which was "insured motor vehicles where the insurer disclaims liability or denies coverage." Subsequent to the accident "the insurance company became defunct and unable to fully satisfy claims covered by its policies." The court observed that in implementing this specific category another section of the law provided that the person claiming protection must file an affidavit stating that the insurer of the person alleged to be liable has "disclaimed liability or denied coverage because of some act or omission of the person or persons liable or alleged to be liable."

The court took the view that the legislation should be strictly construed and that since the legislature had prescribed seven specific categories in which the statutes applied, a strong inference must be drawn "that what was not included was intended to be excluded." It concluded that the legislature never contemplated coverage in a case where the insurance company involved became defunct after the accident.

■ We do not think our statutes on the subject should be so

narrowly construed. We have previously expressed the view that the Virginia uninsured motorist legislation is remedial in nature, being for the purpose of protecting through their own insurers the innocent victims of irresponsible motorists. "The legislation having been enacted for the benefit of the injured parties, it is to be liberally construed so that the purpose intended may be accomplished." *Storm v. Nationwide Ins. Co.*, 199 Va. 130, 135, 97 S.E.2d 759, 762.

The judgment appealed from is

*Affirmed.*