## Pattani, Appellant, *v.* Keystone Insurance Company.

Argued April 20, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

re-argument refused August 14, 1967.

*Stephen M. Feldman*, with him *Joseph G. Feldman*, and *Feldman and Feldman*, for appellant.

*John S. Kokonos*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, June 29, 1967:

Bruce Pattani, appellant, was injured in a collision, which occurred on January 3, 1965, between an auto-

mobile driven by him and one driven by Reversa Taylor. The Taylor automobile, at the time of the accident, was insured by Wissahickon Mutual Casualty Company, and appellant was insured by appellee, Keystone Insurance Company. Appellant's policy, written by appellee, contained uninsured motorist coverage, as required by the Act of August 14, 1963, P. L. 909, §1, 40 P.S. §2000.

The statute provides that all automobile liability insurance policies issued within the Commonwealth are required to provide, unless the coverage is expressly rejected in writing, coverage for damages caused by uninsured owners and operators of motor vehicles. The statute does not define uninsured motorists. The policy provision involved does, however, define an uninsured automobile as: "an automobile as to which there is . . . no . . . insurance policy applicable at the time of the accident . . . or with respect to which there is a policy applicable at the time of the accident but the company writing the same denies coverage thereunder."

Appellant filed a suit in trespass against Reversa Taylor, to recover damages for personal injuries sustained in the collision. Wissahickon Mutual entered into a defense on behalf of Miss Taylor, and represented her up to and during a compulsory arbitration hearing, held on February 21, 1966, in the County Court of Philadelphia County. That arbitration hearing resulted in a finding for appellant in the amount of $719. On March 18, 1966, Wissahickon Mutual, being insolvent, went into receivership. Thereupon, appellant made a demand upon appellee that the matter be submitted to arbitration in accordance with the provisions of his uninsured motorist coverage contained in his policy written by appellee. Appellee refused arbitration, and appellant commenced an action in the Court of Common Pleas of Philadelphia County to compel arbitration. The petition was denied, and appellant

appealed to the Superior Court, which affirmed the judgment of the Court of Common Pleas, with one Judge dissenting. On appellant's petition, we granted allocatur.[1]

The issue before this court was well stated in the majority opinion of the Superior Court as "whether the uninsured motorist provision of [this] automobile [policy] extend to those covered under the policy when at the time of the accident the person causing the accident was covered by liability insurance which subsequently lapsed because of the insolvency of the carrier." The Superior Court majority concluded that the insolvency of the carrier subsequent to the accident did not make the uninsured motorist provision of the policy applicable; we reach an opposite conclusion. We agree with the statement of the dissenting opinion in the Superior Court that: "When an insurer fails to defend a claim, or to satisfy a judgment against its insured, whether voluntarily or involuntarily, it 'denies coverage' to him in the only meaningful sense of that term."

The majority of the Superior Court concluded that inasmuch as the Taylor automobile was covered by insurance at the time of the accident, and there had been no express denial of that insurance coverage, the Taylor automobile was not an uninsured vehicle within the meaning of the policy provision. This case, while novel in the appellate courts of Pennsylvania, has been considered and decided in other jurisdictions. The Supreme Court of Appeals of Virginia, interpreting a statute of that State in *State Farm Mutual Automobile Insurance Co. v. Brower,* 204 Va. 887, 134 S.E. 2d 277 (1964), reached a conclusion opposite to that reached

---

[1] The Superior Court had two cases before it, which were decided in one opinion. Both cases were decided in the Superior Court sub nom *Levy v. Keystone Ins. Co.,* 209 Pa. Superior Ct. 15, 223 A. 2d 899 (1966).

by the Superior Court. The Virginia statute in question required uninsured motorist coverage in all automobile liability policies issued in the State of Virginia, and further contained a provision defining uninsured vehicles. That definition included as uninsured vehicles those where there was insurance but the insurance company writing it denied coverage thereunder. The court held that the refusal of the insurance carrier, which had become insolvent subsequent to the accident, to pay the judgment which its insured had become obligated to pay, constituted a denial of coverage, thereby invoking the uninsured motorist coverage of the other driver's insurance policy. The Court said: "State Farm argues that neither National nor any of its receivers 'have made an express denial of coverage' to Mazza and hence that Mazza's automobile was not an uninsured vehicle. But [the Virginia statute] does not say that the denial must be express. It says only that the automobile is an uninsured vehicle if the insurance company 'denies coverage'. There is nothing in the letter of the statute nor, as we believe, in the spirit and purpose of the statute, that requires the denial to be expressed. Denial of coverage clearly may be as effectively made by the conduct of the insurer as by its spoken or written word."

The Supreme Court of South Carolina followed *Brower* when faced with a similar situation in *North River Ins. Co. v. Gibson,* 244 S.C. 393, 137 S.E. 2d 264 (1964). In that case, again, an insurance carrier became insolvent subsequent to the accident which precipitated the litigation. Under the South Carolina statute, requiring uninsured motorist coverage, an uninsured vehicle was defined as one, inter alia, on which liability insurance was carried but as to which the insurer denies coverage. The court held that the right of the insured to recover on his uninsured motorist coverage is not necessarily determinable as of the date

of the collision. The South Carolina Supreme Court adopted the language of *Brower* that: "An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give."

Appellee, in the instant case, contends that the South Carolina decision in *Gibson* is dependent upon a 1963 amendment to the South Carolina statute, which amendment specifically defined an uninsured vehicle as one on which there was insurance but the insurance carrier who wrote it was subsequently declared insolvent. Such, however, is not the rationale of the South Carolina decision. It held specifically that the purpose and effect of the amendment was to clarify, rather than to broaden, the coverage afforded by the statute as it existed prior to the amendment and at the time of the accident which gave rise to the case. In that connection, it should be added that the decision in *Federal Ins. Co. v. Speight*, 220 F. Supp. 90, E.D. S.C. (1963), wherein the Federal District Court construed the South Carolina statute in the same manner as the Superior Court construed the policy at bar, is of no authoritative value, inasmuch as that decision preceded *Gibson* by 11 months, and the Supreme Court of South Carolina, in *Gibson*, decided to the contrary.

The most recent decision on this subject is *Katz v. American Motorist Ins. Co.*, 53 Cal. Reporter 669 (1966). In that case, the California Court of Appeals was faced with a situation similar to those faced by the appellate courts of Virginia and South Carolina. There, too, the statute requiring uninsured motorist coverage defined an uninsured motor vehicle as one, inter alia, covered by insurance but the company writing it denies coverage thereunder. Once again, the tortfeasor's carrier became insolvent subsequent to the accident, and the Court of Appeals of California adopted the reasoning of Virginia and South Carolina. The Court pertinently stated: "The reasoning of the Vir-

ginia court in the Brower case is sound, and is consistent with the letter and the spirit of the California statute. [The California statute] is a part of a pattern of statutes which are 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' [citing cases] Such statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own. [citing cases].[2]

"The statutory objective is not attained by giving the injured person a claim against an insolvent. Our conclusion is that an insurer who becomes insolvent 'denies coverage' within the meaning of [the California statute] . . . and that plaintiff here is entitled to the protection afforded by the policy written by defendant with respect to uninsured motorists."

The only way in which the case at bar differs from those decided in Virginia, South Carolina and California, is in the fact that the Pennsylvania uninsured motorist statute does not define uninsured vehicles, whereas the Virginia, South Carolina and California statutes do. The policy in question here, however, defines uninsured vehicles in almost exactly the same fashion as do the statutes of the other states, whose decisions are cited herein. We agree with their conclusion, and with the conclusion of the dissenting opinion of the Superior Court that insolvency of the tortfeasor's carrier occurring subsequent to the accident, and the consequent refusal or inability of that carrier to defend or pay judgments to which its insured has become liable, constitutes a denial of coverage within the uninsured motorist provision of the insured's pol-

---

[2] See also *Allstate Ins. Co. v. Fusco*, 223 A. 2d 447 (R.I. 1966) (footnote added).

icy and entitles the other insured to proceed in accordance with his own insurance policy.

The orders of the Superior Court and of the Court of Common Pleas No. 6 of Philadelphia County are reversed, and the case is remanded to the Court of Common Pleas for further proceedings consistent herewith.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join in the majority opinion, but I wish to add that the result reached therein is, in my view, mandated not only by the contract provisions of this specific policy but also by the Uninsured Motor Vehicles Statute, Act of August 14, 1963, P. L. 909, 40 P.S. §2000. An uninsured motorist is one who is without effective insurance coverage and is thus incapable of satisfying the minimum liability imposed by the Legislature. Clearly the Legislature did not intend to restrict the benefits of the Uninsured Motor Vehicle Act to those cases where the tortfeasor lacks insurance at the moment of injury or where his insurance carrier denies recovery, since realistically, one injured by a tortfeasor whose carrier is or has become insolvent prior to the satisfaction of his claim is just as unprotected as is the person injured by a tortfeasor who has no insurance at all.

Thus, I read the statute to mean that when the defendant's insurance company, for whatever reason, fails to assume its responsibility under the contract existing between the company and the tortfeasor, that tortfeasor, so far as both the statute and the injured person are concerned, is an uninsured motorist. In either circumstance, the injured person's insurance carrier must provide substitute coverage; if it were otherwise the obvious legislative purpose would not be fulfilled.

Mr. Justice MUSMANNO and Mr. Justice EAGEN join in this concurring opinion.

DISSENTING OPINION BY MR. JUSTICE JONES:

I dissent from the views expressed in the majority opinion and would affirm the judgment on the basis of the majority opinion of the Superior Court (*Levy v. Keystone Insurance Company*, 209 Pa. Superior Ct. 15, 223 A. 2d 899 (1966)).

Mr. Chief Justice BELL joins in this dissenting opinion.