Rockingham,
No. 5637.

DIANE R. McCAFFERY

*v.*

ST. PAUL FIRE & MARINE INSURANCE CO.

Argued November 7, 1967.
Decided December 29, 1967.

*Robert A. Shaines* and *Fred J. Madrigan* (*Mr. Madrigan* orally), for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* and *E. Donald Dufresne* (*Mr. Dufresne* orally), for the defendant.

KENISON, C. J. The parties submitted an agreed case on stipulated facts (*Lariviere* v. *New Hampshire Fire Ins. Co.,* 105 N. H. 73) and the Court (*Leahy,* C. J.) reserved and transferred without ruling the question whether the plaintiff is entitled to recover under the uninsured motorists endorsement of the policy issued by the defendant. The issue presented is where the insurer of the tort-feasor's automobile becomes insolvent after the accident, does this make the automobile "uninsured" within the meaning of the New Hampshire Uninsured Motorists Law (RSA 268:15) so as to allow the injured party to recover under his or her uninsured motorists endorsement.

The plaintiff was injured in a collision, which occurred January

1, 1964 in Portsmouth, New Hampshire, between her automobile and one owned by Dennis Webster and operated by one Elmore with the owner's permission. The Webster automobile, at the time of the accident, was insured by People's Indemnity Insurance Company and the plaintiff was insured by the defendant. Plaintiff's policy contained uninsured motorist coverage required by RSA 268:15. This statute does not define the phrase "uninsured motor vehicle" but the policy provision was in a form approved by the Insurance Commissioner. RSA 412:2-a ( supp ). The policy provision in pertinent part defined an uninsured automobile as one with respect to which "there is . . . no insurance policy applicable at the time of the accident . . . or with respect to which there is an . . . insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder."

Webster's insurer, denied coverage on January 28, 1964 but withdrew its denial on May 4, 1964. Plaintiff sued the operator of the Webster automobile on July 7, 1964 and the insurer entered its appearance on April 8, 1965. The insurer advised plaintiff it was in financial difficulty on June 28, 1965 and it was decreed insolvent July 30, 1965. The insurer withdrew its defense on November 7, 1965 for lack of funds and the plaintiff's action against the operator of the Webster automobile was defaulted and continued for judgment. The plaintiff, since February 20, 1964, had maintained its claim for protection under the uninsured motorist's provision of the policy issued by the defendant.

There is a conflict in the cases as to whether uninsured motorist coverage applies to cases where the alleged tort-feasor has insurance but it subsequently lapses because of the insurer's insolvency. Annot. 79 A.L.R. 2d 1252. Several courts have decided that the insurer "denies coverage" whether it is done voluntarily or involuntarily and that insolvency of the carrier is just as effective a denial of coverage as an express disclaimer to that effect. *Pattani* v. *Keystone Ins. Co.,* 426 Pa. 332 ( 1967 ); *Katz* v. *American Motorist Ins. Co.,* 244 Cal. App. 2d 886; *State Farm Mut. Ins. Co.* v. *Brower,* 204 Va. 887; *North River Ins. Co.* v. *Gibson,* 244 S. C. 393. We recognize,, as do the text writers, that the conflict of authority on this question requires a close examination of the development of uninsured motorist coverage in this state, both legislative and judicial. 12 Couch, Insurance, *s.* 45.636 ( 2d *ed.* 1964 ); 7 Blashfield, Automobile

Law and Practice, *s.* 274:11 ( 3d *ed.* 1966 ); 7 Appleman, Insurance Law and Practice, *s.* 4331, n. 2.75i and 2.75j ( 1967 supp. ).

"New Hampshire in 1957 was the first state to require that uninsured motorist coverage be made a standard feature of every policy of automobile liability insurance issued in the state." 48 Calif. L. Rev. 516, 517 ( 1960 ); Laws 1957, 305:8-10; RSA 268:15, 16; RSA 412:2-a ( supp ). It was "designed to close a gap in the protection afforded the public . . . " under the Financial Responsibility Act. *Kirouac* v. *Healey,* 104 N. H. 157, 159. While the gap was not completely closed, there was substantially greater protection to the public in accidents involving uninsured motorists. *Hein* v. *Nationwide Ins. Co.,* 106 N. H. 378; *Maryland Cas. Co.* v. *Howe,* 106 N. H. 422, 424. We have not adopted the rule of construction that all insurance policies will be strictly construed against the insurer and in favor of the insured. *McGinley* v. *John Hancock Ins. Co.,* 88 N. H. 108. The test in this jurisdiction is what a reasonable person in the position of the insured would understand the policy to mean. *Peerless Insurance Co.* v. *Clough,* 105 N. H. 76, 79; *Hoyt* v. *Insurance Company,* 92 N. H. 242, 243. In employing this test we have not allowed the literal language of the policy to obscure or overcome the legislative purpose expressed in the governing statute and this has been particularly true of uninsured motorist coverage. *Carrignan* v. *Allstate Ins. Co.,* 108 N. H. 131.

In the light of the legislative purpose of our statute ( RSA 268:15 ), we hold that a failure of an insurance company to defend its insured by reason of insolvency constitutes a denial of coverage within the terms of the uninsured motorist policy and that a reasonable person in the position of the insured would so understand it. *Pattani* v. *Keystone Ins. Co.,* 426 Pa. 332 ( 1967 ); *Katz* v. *American Motorist Ins. Co.,* 244 Cal. App. 2d 886; *State Farm Mut. Ins. Co.* v. *Brower,* 204 Va. 887; *North River Ins. Co.* v. *Gibson,* 244 S. C. 393. See *Carrignan* v. *Allstate Ins. Co.,* 108 N. H. 131, 133; Widiss, Perspectives on Uninsured Motorist Coverage, 62 Nw. L. Rev. 497, 512, 515 ( 1967 ). One who has an insurance policy backed by an insolvent carrier has a paper tiger to frame on the wall but both he and the party he injures are just as unprotected as where there is no insurance at all.

Attention is called to the amendment of the uninsured motorist law effective August 26, 1967, which provides that insolvency of the insurance carrier must occur within one year after the date of the accident. RSA 268:15-a II, III (supp); Laws 1967, 284:2. This amendment does not apply to an accident which happened on January 1, 1964. *North River Ins. Co.* v. *Gibson,* 244 S. C. 393, 398; *Pattani* v. *Keystone Ins. Co.,* 426 Pa. 332, 337 (1967).

"Ten years have now elapsed since New Hampshire initiated the mandatory use of this new breed of insurance known as 'uninsured motorist coverage.' Concededly, the endorsement is no panacea. It is still the subject of much controversy, and perhaps even more bewilderment and confusion. The path to a just award under this coverage is lined with pitfalls, ruts and hazardous curves in the form of conditions, exclusions and restrictive definitions. Such is true, however, of the path to recovery under most types of insurance. Whatever the criticism, this experiment is registering a high degree of success in achieving its objective — to alleviate many of the woes heretofore borne by the innocent victims of financially irresponsible motorists. It seems to be here to stay." Notman, A Decennial Study of the Uninsured Motorist Endorsement, 43 Notre Dame Lawyer, 5, 23 (1967). On the agreed facts in this case the answer to the question transferred by the Superior Court is that the plaintiff has presented a proper claim under the uninsured motorist endorsement of the policy issued by the defendant, St. Paul Fire & Marine Insurance Company.

*Remanded.*

All concurred.