WINANS *v.* HARTFORD ACCIDENT INDEMNITY COMPANY

1. INSURANCE—DENIAL OF COVERAGE.
   Denial of coverage may be as effectively made by the conduct of the insurer as by its spoken or written word.

2. INSURANCE—DENIAL OF COVERAGE.
   An insurer "denies coverage" in the only meaningful sense of the term when it fails to defend a claim or to satisfy a judgment against its insured, whether the failure is voluntary or involuntary.

3. STATUTES—UNINSURED MOTORIST ACT—REMEDIAL STATUTES.
   The uninsured motorist act is remedial in nature and the Court of Appeals accepts it as the public policy of this state (MCLA § 500.3010).

4. INSURANCE—UNINSURED MOTORIST—INSOLVENCY OF INSURER.
   An insurance carrier denies coverage within the meaning of the uninsured motorist endorsement of an automobile liability policy when it fails to respond to its duty under a policy by reason of its insolvency.

Appeal from Berrien, Karl F. Zick, J. Submitted Division 3 May 6, 1970, at Grand Rapids. (Docket No. 8,581.) Decided June 26, 1970. Application for leave to appeal filed July 15, 1970.

Complaint by Julia Winans against Hartford Accident Indemnity Company for declaratory relief that she was entitled to payment under an automobile

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 44 Am Jur 2d, Insurance §§ 1544–1551.
[1, 2, 4] 7 Am Jur 2d, Automobile Insurance § 16n.
[3] 7 Am Jur 2d, Automobile Insurance §§ 135–138.

liability insurance policy. Summary judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Keller & Keller* (*Donald L. Bleich,* of counsel), for plaintiff.

*James & Dark,* for defendant.

Before: HOLBROOK, P. J., and BRONSON and MUN-RO,* JJ.

HOLBROOK, P. J. On December 16, 1965, plaintiff was a passenger in an automobile operated by her husband and insured by defendant which collided in the state of Illinois with another automobile which was insured by the St. Lawrence Insurance Company. On January 13, 1967, the St. Lawrence Insurance Company was placed into receivership by the state of Illinois. The receiver of said company has neither acknowledged nor honored plaintiff's claim. Thereafter, plaintiff made a claim against defendant under the uninsured motorist coverage of her husband's automobile liability insurance policy. Defendant refused to honor the claim based upon the case of *Michigan Mutual Liability Company* v. *Pokerwinski* (1967), 8 Mich App 475. Plaintiff then filed for declaratory relief and defendant made a motion for summary judgment which was granted November 18, 1969.

On appeal, plaintiff contends that an insurance carrier denies coverage within the meaning of the uninsured motorist endorsement of an automobile liability policy when it becomes insolvent subsequent to an accident involving an automobile it insured.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant asserts, and correctly, that the language used in the policy of insurance in the *Michigan Mutual Liability Company* case is the same language used in the policy of insurance in the instant case issued by the Hartford Accident Indemnity Company defining an uninsured highway vehicle, *viz.*:

"(a) A highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amount specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder."

In order to better understand the law at the time, we restate in part what our Court said in the *Michigan Mutual Liability Company* case, *supra,* pp 478, 479:

"The second way an automobile may be 'uninsured' within the specific definition of the policy is where an insurer 'denies coverage' on a policy which was in fact in effect at the time of the accident. Michigan Mutual asserts that a denial of coverage requires some express or affirmative action by the insurer; in support of this position, the most persuasive cases are *Federal Insurance Company* v. *Speight* (ED SC), 220 F Supp 90 and *Pattani* v. *Keystone Insurance Company* (1966), 209 Pa Super 15 (223 A2d 899). Defendants, on the other hand, claim that there is a denial under the terms of the uninsured motorists provision when there is a failure, for whatever reason, to supply the contracted-for coverage. Defendants urge as sustaining their view:

*State Farm Mutual Automobile Insurance Company*
v. *Brower* (1964), 204 Va 887 (134 SE2d 277) and
*North River Insurance Company* v. *Gibson* (1964),
244 SC 393 (137 SE2d 264). It is to be noted that
the latter two cases are final pronouncements by
the highest courts of the respective States while of
the first two cases, the Federal decision construed
the South Carolina law prior to the now-controlling
*North River Case* and the Pennsylvania case is a
decision by an intermediate appellate court which
is now before the Pennsylvania supreme court."

The cases that our Court referred to as supporting
its decision are: *Federal Insurance Company* v.
*Speight, supra,* and *Pattani* v. *Keystone Insurance
Company, supra,* respectively. As indicated by the
Court, the *Federal* decision was abrogated by the
case of *North River Insurance Company* v. *Gibson,
supra,* via the *Erie* doctrine, *Erie R. Co.* v. *Tompkins* (1938), 304 US 64 (58 S Ct 817, 82 L Ed 1188).

The *North River* case, decided by the highest court
of South Carolina, held:

"The applicable statute, § 46–750.14, Code of Laws
of 1962, requires that automobile liability insurance
policies issued or delivered in this state contain an
endorsement obligating the company to pay to the
insured, within prescribed limits, such sum as he
shall be legally entitled to recover as damages from
the owner or operator of an uninsured motor vehicle. At the time of this accident, an 'uninsured
motor vehicle' was defined by § 46–750.11(3) as 'a
motor vehicle as to which there is no  *  *  *  liability insurance  *  *  * , or there is such insurance,
but the insurance company  *  *  *  denies coverage thereunder.  *  *  *  A motor vehicle shall be
deemed to be uninsured if the owner or operator
thereof be unknown.'

"This definition extends the reach of § 46–750.14
to certain situations in which the tort feasor is not,

literally, the operator of an uninsured motor vehicle at the time of the collision. Under this definition, the issue is not controlled by the existence of insurance on the Long automobile at the time of the accident. The real question is whether Guaranty has effectively denied coverage, within the meaning of the statute.

\*    \*    \*

"Our statute on uninsured motorist coverage was modeled after the Virginia statute (*Laird* v. *Nationwide Insurance Co.*, 243 SC 388 [134 SE2d 206]), which contained a similar definition of 'uninsured motor vehicle.' *State Farm Mutual Automobile Ins. Co.* v. *Brower,* 204 Va 887 (134 SE2d 277), is the only authority which has been called or come to our attention in which this definition has been applied to facts similar to those with which we deal. The question in that case was whether an insurance company which had been placed in the hands of a receiver some three months after its insured had been involved in an accident, and had, consequently, defaulted in its contractual obligations, had denied coverage within the meaning of the statute. We quote from the opinion:

\*    \*    \*

" 'An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give. Here National has failed to give Mazza protection against the damages he has "become legally obligated to pay" which National specifically promised to pay for him. Its failure to appear, to defend and to pay was a denial of coverage within the meaning of § 38.1–381(c) (ii), and Mazza's car was therefore "an uninsured motor vehicle." ' "

The case of *Pattani* v. *Keystone Insurance Company* (1967), 426 Pa 332 (231 A2d 402) held, in reversing the intermediate appellate court decision cited with approval in the *Michigan Mutual* case,

that the lack of the express denial of coverage by
the tortfeasor's automobile liability insurer, where
there is a viable contract of insurance existing after
the accident, is not conclusive that the tortfeasor's
vehicle was not an uninsured vehicle.  Further, the
court decided:

"The only way in which the case at bar differs
from those decided in Virginia, South Carolina and
California, is in the fact that the Pennsylvania un-
insured motorist statute does not define uninsured
vehicles, whereas the Virginia, South Carolina and
California statutes do.  The policy in question here,
however, defines uninsured vehicles in almost exact-
ly the same fashion as do the statutes of the other
states, who decisions are cited herein.  We agree
with their conclusion, and with the conclusion of the
dissenting opinion of the Superior Court that in-
solvency of the tortfeasor's carrier occurring sub-
sequent to the accident, and the consequent refusal
or inability of that carrier to defend or pay judg-
ments to which its insured has become liable, consti-
tutes a denial of coverage within the uninsured mo-
torist provision of the insured's policy and entitles
the other insured to proceed in accordance with his
own insurance policy."

Both *North River* and *Pattani* followed the prec-
edent setting case of *State Farm Mutual Auto-
mobile Insurance Company* v. *Brower, supra,* de-
cided by the Supreme Court of Virginia.  In *Brower*
the Court set out the obligations of the insurance
company as spelled out in the tortfeasor's insur-
ance policy:

"(1) 'To pay on behalf of the insured [Mazza]
all sums which the insured shall become legally ob-
ligated to pay as damages because of bodily injury
*  *  *  sustained by any person caused by accident
and arising out of the ownership, maintenance or

use of the automobile'; and to (2) 'Defend any suit against the insured alleging such injury * * * .'"

In the *Brower* case the National Automobile Insurance Company became insolvent subsequent to the injury-producing accident, and the Court continued its discussion of State Farm's responsibilities under its uninsured motorist provision:

"National although duly notified by Mazza of Brower's suit against him, did not, nor did its receiver, defend the suit or even appear therein, nor has either paid any part of the judgment which its insured has become obligated to pay.

"State Farm argues that neither National nor any of its receivers 'have made an express denial of coverage' to Mazza and hence that Mazza's automobile was not an uninsured vehicle. But § 38.1–381(c) (ii) does not say that the denial must be expressed. It says only that the automobile is an uninsured vehicle if the insurance company 'denies coverage.' There is nothing in the letter of the statute nor, as we believe, in the spirit and purpose of the statute, that requires the denial to be expressed. Denial of coverage clearly may be as effectively made by the conduct of the insurer as by its spoken or written word.

"There is no apparent reason why the words in the phrase 'denies coverage' should not be given their natural and commonly understood meaning in the context in which they are used.

" 'To deny means to withhold, to refuse to grant.' Ballentine's Law Dict., p 360. A person in distress is denied help when one who hears his cries says nothing but walks away.

"[2] 'Coverage' in the field of insurance means 'protection by insurance policy: inclusion within the scope of a protective or beneficial plan (coverage against liability claims).' Webster's Third New Int. Dict., pp 524, 525.

"[3] An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give."

In the *Michigan Mutual* case our Court employed the plain meaning approach to construe the term "deny coverage"—"We must accord to the words actually used their normal and natural meaning."

The Court defines the verb "to deny" as a mere failure or inability—" 'denies' imports an affirmative refusal."

As hereinabove indicated, the *State Farm* case (Va) dealt squarely with this very issue, interpreting a statute defining an uninsured motorist which employed precisely the same words as the policy definition in the instant case, and the Court used the dictionary definition of the verb "to deny" in arriving at its decision. That Court said:

"Denial of coverage clearly may be as effectively made by the conduct of the insurer as by its spoken or written word."

A number of cases have been decided in other jurisdictions concerning the same issue before the Court in the instant case and they all fall into line with the leading *State Farm* case, *supra*.

In *Stephens* v. *Allied Mutual Insurance Company* (1968), 182 Neb 562 (156 NW2d 133), the Court said:

"The proper construction of this separately paid for insurance coverage clause should not be an exercise in the blind semantics of literal language construction. We do not feel that the Legislature intended to restrict the benefits of uninsured motorist coverage to those cases where the tortfeasor lacks insurance at the very moment of injury. We feel that when an insurer fails to defend a claim or to satisfy a judgment against its insured, whether

*voluntarily or involuntarily,* it 'denies coverage' in the only meaningful sense of the term. Realistically, an injured person is as unprotected by a tortfeasor insurance carrier who has become insolvent prior to the satisfaction of his claim just as much as is the person injured by a tortfeasor who has no insurance at all."

Also see the cases collected at 26 ALR3d page 904, 906, § 8 and the annotated case of *Stephens* v. *Allied Mutual Insurance Company, supra.*

Plaintiff herein asserts that because of the prevailing rule in other jurisdictions in our country, and because PA 1965, No 388,** declaring the public policy of this state we should no longer follow *Michigan Mutual, supra.* The uninsured motorist act, approved October 25, 1965, was *ordered to take immediate effect,* with an effective date stated in the act as being January 1, 1966. It is further claimed that this act declared the public policy of our state as of October 25, 1965, in relation to the precise question presented to this Court. The statute in question is remedial in nature and we feel that this Court should now in this case accept it as the public policy of our state.

---

** MCLA § 500.3010 (Stat Ann 1970 Cum Supp § 24.13010). "No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death set forth in section 504 of Act No. 300 of the Public Acts of 1949, as amended, being section 257.504 of the Compiled Laws of 1948, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including owners or operators insured by an insolvent insurer, because of bodily injury, sickness or disease, including death, resulting therefrom, unless the named insured rejects such coverage in writing as provided herein.

We further state what was said in the case of
*Stephens* v. *Allied Mutual Insurance Company, supra:*

"By its terms, the policy provision extends the
coverage beyond the mere existence of an insurance
contract at the time of the accident. It is to be
assumed, considering the separate premium charge
and the remedial and public policy purpose of the
statute, that the voluntary inclusion of this clause
by the defendant-insurer itself was intended to make
the coverage effectual rather than merely nominal.

"The uninsured motorist on the highway is a real
risk. He is a real risk because of his probable inability to pay or respond for damages for negligent
driving. The purpose of the statute and this particular clause is to eliminate that risk. To subdivide
or apportion this risk and to make it dependent upon
the whimsical uncertainty of solvency of an unidentified and uncertain tortfeasor insurance carrier is
both unrealistic and unreasonable. It invokes an
entirely unrelated and undeterminable factor that
mitigates and lessens the accomplishment of the
purpose of the statute and the area of effectual coverage sought to be reached by the voluntary inclusion of the clause in the insuring provision. The
majority rule, almost without contradiction, is that
where uninsured motorist statutes or policy provisions have defined an uninsured motorist in the
same language as was used in the present policy,
subsequent insolvency of an insurer constitutes a
denial of coverage within the meaning of the provisions of the policy or statute. *State Farm Mutual
Automobile Ins. Co.* v. *Brower, supra; North River
Ins. Co.* v. *Gibson,* 244 SC 393 (137 SE2d 264); *Katz*
v. *American Motorist Ins. Co.,* 244 Cal App 2d 886
(53 Cal Rptr 669); *Pattani* v. *Keystone Ins. Co.,*
426 Pa 332 (231 A2d 402)."

We are also constrained to adopt the majority
rule, as determined in the other jurisdictions cited

in this opinion, that under the terms of the policy of insurance, defining an uninsured highway vehicle as one without insurance, "or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder", includes an insurer in a situation such as is present in this case where the insurer fails to respond to its duty under the policy by reason of insolvency.

In fairness to the trial judge we state that at the time of his decision he was required to follow the case of *Michigan Mutual Liability Company, supra,* that being the law of this state.

Reversed and remanded for further proceedings not inconsistent with this opinion. Costs to plaintiff.

All concurred.