168 N.J. Super. 230 (1979)
402 A.2d 952
STATE FARM MUTUAL AUTOMOBILE LIABILITY INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
EARL R. KISER AND ROSEMARY KISER, DEFENDANTS-RESPONDENTS, AND NEW JERSEY PROPERTY LIABILITY INSURANCE GUARANTY ASSOCIATION, AS SUCCESSOR TO THE INTEREST OF GATEWAY INSURANCE COMPANY, AND DORIS S. GREENBERG, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1979.
Decided May 16, 1979.
*231 Before Judges LORA, MICHELS and LARNER.
*232 Mr. James J. Casby, Jr. argued the cause for appellant (Messrs. Casby, Garrigle & Chierici, attorneys; Mr. Richard C. Borton on the brief).
Mr. John C. Babin argued the cause for respondents (Mr. Nicholas A. Lacovara, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal presents the question whether an injured person can recover under the uninsured motorist endorsement of his automobile liability policy where he has covered claim against the New Jersey Property Liability Insurance Guaranty Association (Association) as a consequence of the insolvency of the tortfeasor's insurance carrier.
Earl R. Kiser and his wife Rosemary Kiser sustained personal injuries as a result of an automobile accident with the vehicle of Doris S. Greenberg, a Pennsylvania resident, on September 10, 1972. The Kisers were covered by two automobile policies issued by plaintiff State Farm Mutual Liability Insurance Company (State Farm), which contained uninsured motorist (UM) coverage mandated by N.J.S.A. 39:6A-14 and N.J.S.A. 17:28-1.1. Greenberg's vehicle was insured at the time of the accident through a policy issued by Gateway Insurance Company (Gateway).
In August 1974 Gateway was declared insolvent by a court of competent jurisdiction of Pennsylvania, which triggered the involvement of the Association and its duty to undertake the obligations of Gateway, the insolvent insurer, with respect to payment of covered claims. N.J.S.A. 17:30A-8.
The Kisers filed a claim with the Association and were advised on March 25, 1975 that "the claim must be handled by the Pennsylvania Guarantee Association." A subsequent letter of May 16, 1975 from the Association explained that when there are two such associations involved, the claimant shall seek recovery first from the Association of the place *233 of residence of the assured  namely, Pennsylvania. Further inquiry of the Pennsylvania Association elicited the response that under the Pennsylvania statute the claimants must exhaust their remedies under the uninsured motorist coverage of State Farm.[1] 40 Pa. Stat. Ann. § 1701.503.
Faced with the prima facie rejection of the claim by the Associations of both states, the Kisers made a demand for arbitration under their State Farm policies. This was followed by the filing of a declaratory judgment complaint by State Farm and an order staying the arbitration pending disposition of the litigation in the Law Division.
The matter was heard by the trial judge on cross-motions for summary judgment. After an appropriate hearing he granted judgment for the Kisers and dissolved the stay of arbitration. Upon filing of the notice of appeal by State Farm the trial judge again ordered a stay of arbitration pending disposition of the appeal. The rationale underlying the decision below is that the policy language clearly mandates coverage under the undisputed facts herein.
The key clause of the policy relates to the following definition of an "uninsured highway vehicle":
"uninsured highway vehicle" means:
(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent.
Under this policy the insured and his spouse are entitled to recover for bodily injury such damages as they would *234 be legally entitled to recover from an owner or operator of an uninsured highway vehicle. An uninsured vehicle is defined as one without insurance of at least the amount required by the financial responsibility law of this State. It also may consist of an insured vehicle wherein the company has denied coverage or is or becomes insolvent. Since Gateway was declared insolvent by the Pennsylvania court, the uninsured motorist coverage came into play and the Kisers, as assureds, qualified for payment thereunder.
State Farm urges that the substitution of the Association for insolvent Gateway under the provisions of N.J.S.A. 17:30A-1 et seq., which makes available a fund for the payment of claims against insolvent insurers, renders its UM coverage inapplicable. It particularly points to N.J.S.A. 17:30A-8(a)(2), which provides:
a. The association shall
* * * * * * * *
(2) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.
Although this argument may have some surface appeal, further analysis leads to the conclusion that it is without merit in the context of the contractual undertaking of State Farm by clear and explicit language in its own policies. Although the existence of the Association creates another potential source of recovery of claims against the assureds of Gateway, such an available remedy does not affect the contractual right of the Kisers to recover from their own carrier when the policy condition has been met, namely, either a denial of coverage or the insolvency of the carrier. Either of these factors triggers the right to invoke UM coverage via the very definitional term of "uninsured highway vehicle."
It must be noted that the State Farm policy is not couched in terms of collectibility, and that it is immaterial whether or not the assured may be able to recover damages *235 from any other source or fund. Since the policy mandates coverage when the tortfeasor owns or operates an uninsured highway vehicle, the touchstone of liability must be derived from the definition of an uninsured vehicle. Where the insurance carrier has framed a policy contract in carrying out its statutory duty to provide uninsured motorists coverage (N.J.S.A. 17:28-1.1), it must be bound by its terms, and cannot avoid its obligation to its assured by pointing to another possible avenue for recovery of damages.
Neither the statute making UM coverage mandatory nor the policy contract requires the assured to exhaust or even undertake any steps to recover from any third parties, whether such third parties consist of the uninsured motorist, the receiver of an insolvent carrier, or the Association created by the Legislature. The mere occurrence of insolvency of the tortfeasor's insurance carrier or the mere denial of coverage by a solvent carrier is self-executing so as to trigger the responsibility of State Farm to assume coverage by voluntary payment or through arbitration of the claim as the policy provides.
In Illinois an appellate court found that an insurance carrier was liable on its UM policy despite the existence of an Insurance Guaranty Fund. Spearman v. State Security Ins. Co., 57 Ill. App.3d 393, 14 Ill. Dec. 729, 372 N.E.2d 1008 (App. Ct. 1978). Although the decision is based in part upon the provision of the Illinois statute which requires a claimant against the Fund to exhaust such rights as he may have under his own policy, the court nevertheless reasoned:
Requiring plaintiff to proceed first against the Fund would be contrary to the intent of the Legislature. Plaintiff is paying a premium, a portion of which buys the uninsured motorist coverage. Defendant cannot accept this money and then attempt to limit its liability by arguing that plaintiff should make a claim under the Fund rather than her insurance policy...
Finally, the existence of the Fund does not make Mr. Boone an "insured" motorist as defendant contends. The very terms of plaintiff's insurance policy assure this conclusion by defining "uninsured automobile" as

*236 "(c) An automobile with respect to which there is a bodily in-injury liability insurance policy applicable at the time of the accident but the company writing the same is or becomes insolvent subsequent to the date of the accident." [372 N.E. 2d at 1009-1010]
It is of interest to note that in other jurisdictions the insolvency of an insurance company of the tortfeasor has been held to be sufficient in itself to invoke uninsured motorist coverage of the injured person under a clause of the policy which defines an uninsured vehicle as one where the company has denied coverage. See Pattani v. Keystone Ins. Co., 426 Pa. 332, 231 A.2d 402 (Sup. Ct. 1967); Winans v. Hartford Accident Indem. Co., 25 Mich. App. 75, 181 N.W.2d 17 (App. Ct. 1970); Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N.W.2d 133 (Sup. Ct. 1968); State Farm Mut. Auto. Ins. Co. v. Brower, 204 Va. 887, 134 S.E.2d 277 (Sup. Ct. 1964); North River Ins. Co. v. Gibson, 244 S.C. 393, 137 S.E.2d 264 (Sup. Ct. 1964).
In Katz v. American Motorist Ins. Co., 244 Cal. App.2d 886, 53 Cal. Rptr. 669 (D. Ct. App. 1966), the court held:
The statutory objective is not attained by giving the injured person a claim against an insolvent. Our conclusion is that an insurer who becomes insolvent "denies coverage" within the meaning of section 11580.2, subdivision (b;) that Compton's vehicle is therefore an "uninsured motor vehicle"; and that plaintiff here is entitled to the protection afforded by the policy written by defendant with respect to uninsured motorists. [53 Cal. Rptr. at 672]
In the framework of this record it is wholly improper for the carrier to abdicate its contractual obligation and compel its assured to spend the time, energy or money to prosecute a claim through the bureaucratic processes of two insurance guaranty associations of New Jersey and Pennsylvania in order to obtain redress. The assureds have no obligation to do so. They paid the premium to State Farm for first party UM coverage. They are entitled to that coverage without regard to the potential success or failure *237 of recovery against either Association. In fact, in this instance wherein State Farm has issued two insurance policies, the assureds are entitled to pursue the potential of recovery on both policies in excess of the statutory limits and the deductible feature contained in the Liability Insurance Guaranty Association Act (N.J.S.A. 17:30A-1 et seq.). See Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 (1974); General Accident Group v. Shimp, 147 N.J. Super. 404 (Law Div. 1977). We perceive of no reason in law or justice why these assureds should be relegated to a claim against the Association with a lesser recovery potential and be deprived of the fruits of the insurance. The only result would be an undeserved windfall for this carrier because of the fortuitous circumstance that the Legislature has created an Association to protect persons who may have claims against insolvent carriers.
In view of the foregoing we approve the ruling below and affirm the judgment in favor of defendants dismissing the complaint and directing that the claims of the Kisers proceed to arbitration in accordance with the terms of the policies of insurance.
NOTES
[1] The New Jersey statute does not contain such an exhaustion requirement.