Pauline J. DiLUZIO, trustee for the heirs of Robert C. DiLuzio, decedent, Respondent,

v.

HOME MUTUAL INSURANCE COMPANY, Appellant (49967).

Appeal of AMERICAN FAMILY MUTU-AL INSURANCE COMPANY (49886).

Nos. 49886, 49967.

Supreme Court of Minnesota.

Feb. 8, 1980.

Cousineau, McGuire, Shaughnessy & Anderson and Harold J. W. Sweet, Minneapolis, for Home Mut. Ins. Co.

Peterson, Bell & Converse and Willard L. Converse, St. Paul, for American Family Mut. Ins. Co.

James R. Schwebel, Minneapolis, Gregory P. N. Joseph, New York City, for respondent.

SCOTT, Justice.

This is an appeal from a summary judgment of the Hennepin County District Court in favor of plaintiff, Pauline DiLuzio. As trustee for the heirs of Robert C. DiLuzio, she brought this action against two defendant insurance companies, Home Mutual Insurance Company ("Home Mutual") and American Family Mutual Insurance Company ("American Family"), alleging that she was entitled to recover insurance proceeds from uninsured motorist policies issued by them. The parties stipulated to the facts, and all parties made motions for summary judgment. The trial court granted plaintiff's motion for summary judgment, holding that the uninsured motorist coverages of both companies were applicable to the accident in question. Both defendants appeal from that judgment.

A two-car collision occurred near Brainerd, Minnesota, on January 25, 1975. One car was owned and driven by Lawrence E. DiLuzio, and insured by Home Mutual. The liability and uninsured motorist limits of the policy were $25,000 per person/$50,000 per accident. Robert C. DiLuzio was a passenger in this car. He held two insurance policies on two cars (not involved in the accident) with American Family. Both of these policies provided uninsured motorist protection up to $25,000 per person/$50,000 per accident.

The second car involved in the accident was owned and driven by Peter W. Thesing and contained six occupants. Thesing was insured, coincidentally, by Home Mutual, for $50,000 per person/$100,000 per accident.

As a result of the accident, both Lawrence and Robert DiLuzio were killed, and all occupants of the Thesing car were injured. Lawrence's $50,000 liability policy with Home Mutual was exhausted by settlements with occupants of the Thesing car. No payments were made to the heirs of Robert. Thesing's $100,000 liability policy with Home Mutual remains intact.

American Family paid $30,010 in "no-fault" payments to the heirs of Robert. No payments were made from the uninsured motorist coverage of Lawrence's policy with Home Mutual or Robert's policies with American Family, and it is these provisions which are the subject of this action.

Only one legal issue is presented to this court:

Does uninsured motorist coverage apply where the accident vehicles are all legally insured, but the liability policy limits of the apparent tortfeasor have been exhausted by settlements with other claimants and, as a result, one claimant has not received any compensation from the tortfeasor's liability coverage?

Plaintiff was granted summary judgment against both companies on the theory that Lawrence was an uninsured motorist vis-a-vis Robert because Lawrence's liability coverage had been exhausted by settlements to other parties, and therefore plaintiff was entitled to compensation from the unin-

sured motorist provisions of both Lawrence's and Robert's policies. The trial court held that plaintiff should recover first from Lawrence's policy with Home Mutual, and if that is insufficient, from Robert's policies on other vehicles with American Family.

Defendants claim on appeal that uninsured motorist coverage was never intended by Minnesota statute or by the terms of the contracts at issue to apply in situations in which all parties and vehicles are insured but liability coverage is inadequate to compensate all parties. Defendants point out that of the states which have considered this issue, the overwhelming majority have determined that uninsured motorist coverage is inapplicable in this situation.

To resolve the issue, it is first necessary to look at the Minnesota statute pertaining to uninsured motorist coverage. Minn.Stat. § 65B.49, subd. 4 (1974), requires motorists to maintain $25,000 per person/$50,000 per accident coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *." "Uninsured motor vehicle" is defined in subsection (3) of subd. 4 as "any motor vehicle for which a plan of reparation security meeting the requirements of Laws 1974, Chapter 408 is not in effect."

■ The meaning of this statute is clear. An uninsured motor vehicle is one which does not carry insurance meeting the minimum legal requirements. In the instant case, both automobiles involved were insured under policies meeting legal requirements. Therefore, the automobiles were not uninsured motor vehicles. In particular, the apparent tortfeasor, Lawrence DiLuzio, was not an owner or operator of an uninsured motor vehicle, and, according to the statute, uninsured motorist coverage is not applicable.

■ Plaintiff does not dispute the fact that by its language the uninsured motorist statute does not include situations in which a motorist is insured but his liability limits are exhausted. Instead, plaintiff argues that the public policy underlying the statute is to provide a minimum dollar recovery in the case of injury at the hands of an uninsured motorist. Plaintiff cites several Minnesota cases which fairly support this proposition. However, emphasis must be placed on the word "uninsured." While the legislature intended to protect the injured party from the uninsured motorist, it simply did not address the question of the insured motorist whose coverage is exhausted. While one might argue that this is a parallel situation which should be protected, it clearly was not. When statutory language is this clear, it may not be construed to reach a different or more preferable result. *Graber v. Lametti Construction Co.*, 293 Minn. 24, 197 N.W.2d 443 (1972); *Simon v. Milwaukee Mutual Automobile Insurance Co.*, 262 Minn. 378, 115 N.W.2d 40 (1962).

■ Plaintiff also attempts to support her position as to the meaning of "uninsured motorist coverage" from the language of defendants' contracts with Lawrence and Robert DiLuzio. The policy issued by Home Mutual to Lawrence DiLuzio defines "uninsured automobile" as an automobile for which there is no legally sufficient "bodily injury liability bond or insurance policy applicable at the time of the accident * * *." This definition pinpoints the time of the accident as the time at which one determines whether or not an automobile is insured. Lawrence DiLuzio was legally insured at the time of the accident. Plaintiff's attempt to characterize the instant situation as a "post-accident denial of coverage" for the purpose of altering the time for determination of insurance coverage is simply unpersuasive. Similarly, the policies issued by American Family to Robert DiLuzio define "uninsured automobile" as one for which no legally sufficient insurance is applicable, or one for which insurance is applicable but the company writing the policy denies coverage thereunder. Again, plaintiff attempts to characterize Home Mutual's exhaustion of benefits as a "denial of coverage." However, the denial of coverage cases cited in plaintiff's brief to support her position are cases in which the insurance company refused to pay any-

*thing* under the policy because the insured refused to cooperate in the defense of the plaintiffs' suits,[1] or the insurer was insolvent.[2] In those cases, the insurance company refused to pay anything to anyone under the policy; in the instant case, in marked contrast, Home Mutual paid out to the limits of Lawrence DiLuzio's liability policy. Moreover, in the case of an insolvent insurance carrier, the American Family uninsured motorist coverage would apply under its own policy definition. Thus, the instant case cannot be characterized as a denial of coverage.

A further indication that uninsured motorist coverage was never intended by statute or by contract to cover situations such as the present one can be found in the availability of *underinsured* motorist coverage. This type of coverage protects the insured when the tort-feasor carries insurance which is legally sufficient but inadequate to cover all damages to the insured. Minn.Stat. § 65B.49, subd. 6(e) (1974), requires an insurer to offer underinsured motorist coverage in an amount at least equal to the insured's own liability limits. Robert DiLuzio chose not to purchase underinsured motorist coverage.[3] We therefore will not distort the meaning of "uninsured" to apply to circumstances in which a party is underinsured.

The majority of other states that have considered this issue have held that uninsured motorist coverage does not apply in situations similar to this case. *Golphin v.*

*Home Indemnity Co.*, 284 So.2d 442 (Fla. App.1973), concerned a situation factually indistinguishable from the instant case. The Florida court concluded:

> *At the time of the accident,* appellee's insurance policy was as equally answerable to the claims of the appellants as it was to the claims of the injured occupants of McDonald's automobile [the other automobile] to whom the full limits of the policy coverage were paid by appellee. The fact that the amount available under the public liability coverage of the policy was exhausted before appellants made their claim against appellee does not in itself render the insured vehicle an "uninsured motor vehicle" within the purview and meaning of the statute. Furthermore, it is obvious that at the time of the accident, and at all pertinent periods subsequent thereto, appellee, as the insurance carrier for the vehicle owned by Mitchell, was wholly solvent and able to make payment with respect to the legal liability of its insured within the limits specified in the policy. Because of the foregoing facts, the Mitchell vehicle was not an uninsured motor vehicle within the definition of the statute.

284 So.2d at 444 (emphasis in original).

California adopted the same position in *Travelers Insurance Co. v. Bouzer*, 39 Cal. App.3d 992, 114 Cal.Rptr. 651 (1974), a case frequently cited with approval by other courts. The California court reasoned that acceptance of the claimants' proposition

---

1. *Vanguard Insurance Co. v. Polchlopek*, 18 N.Y.2d 376, 275 N.Y.S.2d 515, 222 N.E.2d 383 (1966); *Hodges v. Canal Insurance Co.*, 223 So.2d 630 (Miss.1969); *Zurich v. Country Mutual Insurance Co.*, 65 Ill.App.3d 608, 21 Ill.Dec. 837, 382 N.E.2d 131 (1978).

2. *Winans v. Hartford Accident Indemnity Co.*, 25 Mich.App. 75, 181 N.W.2d 17 (1970); *Stephens v. Allied Mutual Insurance Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968); *Pattani v. Keystone Insurance Co.*, 426 Pa. 332, 231 A.2d 402 (1967); *North River Insurance Co. v. Gibson*, 244 S.C. 393, 137 S.E.2d 264 (1964); *State Farm Mutual Automobile Insurance Co. v. Brower*, 204 Va. 887, 134 S.E.2d 277 (1964).

3. Plaintiff argued that under *Lick v. Dairyland Insurance Co.*, 258 N.W.2d 791 (Minn.1977), and *Thiry v. Horace Mann Insurance Co.*, 269

N.W.2d 66 (Minn.1978), Robert DiLuzio would have had to purchase underinsured coverage in an amount greater than $25,000/$50,000 for it to apply in the instant case. Since this case was argued, however, the holding in *Lick* has been limited to accidents occurring before the effective date of the No Fault Act, Minn.Stat. §§ 65B.41 and 65B.71 (1978) (January 1, 1975), in *Holman v. All Nation Insurance Co.*, Minn., 288 N.W.2d 244, 1980. Therefore, because the accident in the instant case occurred on January 25, 1975, the rule of *Lick* and *Thiry* is inapplicable, and plaintiff could have received compensation from underinsured motorist coverage had Robert DiLuzio chosen to purchase it.

would effectively convert uninsured motorist coverage into excess accident insurance, open-ended at least to the limits of the uninsured motorist coverage. The court expressed its opinion that such expanded coverage would not conform to any rational public policy, and the premiums required to support such sweeping coverage might be prohibitive. 114 Cal.Rptr. at 652–3.

One of the more recent cases adopting the majority position is *Strunk v. State Farm Mutual Auto. Insurance Co.*, 90 Wash.2d 210, 580 P.2d 622 (1978). The facts in *Strunk* again are indistinguishable from those in the instant case: plaintiffs received nothing because the insurance policy of the negligent driver was exhausted by payments to others. The court succinctly stated its reasons for holding uninsured motorist coverage inapplicable:

> Nonetheless, the single question is whether these plaintiffs are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle. The simple answer is that these plaintiffs were killed or injured by the operator of an insured vehicle. No question but that the motor vehicle was insured in an amount insufficient to compensate these plaintiffs for their damages, but also there is no question but that the driver was insured in the amounts required by statute. The tortfeasor was underinsured in her ability to respond to all of the horrendous damage caused but she was not uninsured.

> We conclude that there is no room for construing the statute to mean that an insured motorist is insured as to one claimant but ephemerally uninsured when the insurance coverage is exhausted. In so deciding we join the great majority of courts which have considered this problem.

580 P.2d at 623. *See, also, Ziegelmayer v. Allstate Insurance Co.*, R.I., 403 A.2d 653 (1979); *Gardner v. American Insurance Co.*, Nev., 593 P.2d 465 (1979); *Emery v. State Farm Mutual Insurance Co.*, 195 Neb. 619, 239 N.W.2d 798 (1976); *Saari v. State Farm Mutual Automobile Insurance Co.*, 72 Mich.

App. 278, 249 N.W.2d 390 (1977); *Tudor v. Allstate Insurance Co.*, 216 Va. 918, 224 S.E.2d 156 (1976).

Finally, it is again important to note that the uninsured motorist statute is not ambiguous as written. A fair reading of the statute does not include insured motorists whose liability coverage has been exhausted within the term "uninsured motorist." For these reasons, we conclude that any modification in the statute should come from the legislature rather than from this court.

We therefore reverse the trial court, with instructions to enter summary judgment for defendants.

Reversed and remanded.