241 So.2d 698 (1970)
William BARTHOLOMEW, Appellant,
v.
GLENS FALLS INSURANCE GROUP, a New York Corporation, Authorized to Do Business in the State of Florida, Appellee.
No. 2489.
District Court of Appeal of Florida, Fourth District.
October 9, 1970.
Rehearing Denied December 29, 1970.
*699 R.T. Shankweiler of Patterson, Maloney & Frazier, Fort Lauderdale, for appellant.
William Merritt and Michael D. Sikes of Sherouse & Corlett, Miami, for appellee.
WALDEN, Judge.
Summary final judgment was entered which construed an uninsured motorist insurance contract. Defendant appeals. We reverse.
Pertinent parts of Judge Gonzalez' opinion are reproduced as a reflection of the facts, the novel issue, and the trial court's conclusion:
"FINDINGS OF FACTS
"The Plaintiff insurance company, hereinafter referred to as Glens Falls, seeks a declaration of its rights in conjunction with its uninsured motorist insurance contract with Defendant.
"Glens Falls issued its insurance contract to Defendant providing uninsured motorist coverage, among other coverages, effective May 25, 1965 through May 25, 1966; Defendant was injured in an automobile accident on April 30, 1966; the responsible party's insurance carrier, North American Guaranty Insurance Company, was declared insolvent by an Arkansas Circuit Court and a receiver was appointed to manage its affairs on October 2, 1967; and, that a similar order was entered on October 5, 1967, by the Honorable Hugh M. Taylor, Second Judicial Circuit, in and for Leon County, Florida.
"The above facts are not disputed by either party.
"ISSUE PRESENTED
"Glens Falls maintains that Defendant is not covered under the uninsured motorist provisions of its insurance contract because the responsible party's insurance carrier, North American, did not become insolvent within one year from the accident as required by Florida Statutes 627.0851(3) [F.S.A.].
"Defendant contends that the receivership proceeding of October 2, 1967, is not conclusive on the issue of date of `insolvency;' that the date of `insolvency' is to be ascertained under the definition of `insolvency' embraced by the Florida Insurance Code, i.e., Section 631.011, Florida Statutes [F.S.A.]; and that such definition makes necessary a factual determination of when a capital impairment occurred since `insolvency', as defined, constitutes a ground for the application for receivership.
"CONCLUSIONS OF LAW
"Florida Statutes 627.0851(2) [F.S.A.] provides, inter alia, that the term `uninsured motor vehicle' shall include vehicles where the liability insurer of the responsible party is unable to make payment `* * * with respect to the legal liability of its insured within the limits specified therein because of insolvency.' This `insolvency protection' as above provided is qualified in (3) of Florida Statutes 627.0851 [F.S.A.] to the extent that the liability insurer must become insolvent within one year from the date of the accident to be applicable.
"The insurance industry is carefully regulated and controlled by this State as well as all other states. This regulation and the attendant careful scrutiny of insurance practices is based upon the notion that insurance carriers are `quasi public'.
"The Florida State Treasurer and Insurance Commissioner is a cabinet officer who has been given by the legislative board (sic) discretionary powers to regulate insurance companies. His administrative determination is presumed valid with all reasonable presumptions indulged in favor of validity, correctness and his determination is deemed prima facie reasonable and justified by the *700 facts. Varholy v. Sweat [153 Fla. 571], 15 So.2d 267; Hayes v. Bowman, 91 So.2d 795; Fla. Rate Conference v. Fla. R. & Public Utility Commission, 108 So.2d 601; necessarily like presumptions attached to the orders of the Circuit Court of the Second Judicial Circuit.
"Simply put, the insolvency referred to in the limitation provisions of Section 627.0851(3) consists of a judicial, quasi-judicial or administrative finding by some governmental authority that the insurance carrier is `insolvent'.
"We hold, therefore, that where the the insurance carrier of a third-party tort-feasor was declared `insolvent' by an authorized authorized (sic) agency of government acting pursuant to law (more than one (1) year following the commission of the alleged tort) a party may not recover under his uninsured motorist coverage even though the facts giving rise to the finding of insolvency occurred in whole or in part within the one (1) year period.
"Therefore, a pronouncement by a state court at the instigation of the state insurance commissioner should be a final and determinative adjudication as to an insurance company's insolvency.
"If the converse were true, uncertainty would prevail and endless litigation would result. Defunct insurance companies and their regulatory agencies would be the subject of vast and expensive accounting procedures by litigants attempting to determine when the company became insolvent, i.e., when there was an actual impairment of capital as defined by Section 631.011(1), Florida Statutes [F.S.A.].
"A line must be drawn to stabilize the law and make it certain, and this holding should accomplish that result.
"Counsel have been unable to furnish the Court with appellate authority, either local or foreign, for their opposing contentions and the Court knows of none.
"JUDGMENT FOR PLAINTIFF
"It is therefore
"ORDERED AND ADJUDGED, that Final Judgment be and the same is hereby entered on Plaintiff's behalf on the ground that there is no coverage for Defendant under Plaintiff's uninsured motorist provisions for the reasons hereinabove set forth."
While admiring the aim and the forthrightness of the well phrased decision, we feel that it cannot stand for several reasons.
First, neither the Arkansas nor the Florida court determinations purport to decide when insolvency occurred. They simply find that at the time their respective hearings were held that the insurer was insolvent.
Second, insolvency determination under F.S. 1967, section 627.0851, F.S.A., and insolvency determination under F.S. 1967, chapter 631, F.S.A., do not serve the same purpose. Since their purposes are divergent, their determination need not be related, especially when these purposes cross.
Third, it is a denial of due process for the Insurance Commissioner's proceedings to be conclusive upon the issue of insolvency, since the claimant has had no opportunity to present evidence nor cross-examine witnesses in that determination.
Finally, if uncertainty, difficulty and expense are controlling, as Judge Gonzalez' opinion seems to indicate, then these are matters more properly for the Legislature to consider but are insufficient as a basis for this Court to legislate in the area  in the absence of uncertainty and a showing of compatible legislative intent.
Turning now to a consideration of each point in turn, on the first point, Glens Falls maintains that defendant is not covered under the uninsured motorist provisions of its insurance contract because the tort feasor's insurance carrier, North *701 American, did not become insolvent within one year from the date of the accident as required by F.S. 1967, section 627.0851(2), (3), F.S.A.
Section 627.0851
"(2) For the purpose of this coverage the term `uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.
"(3) An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tort-feasor becomes insolvent within one year after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder." (Emphasis supplied.)
As a basis for this position, Glens Falls would show an order of the Circuit Court of Washington County in the State of Arkansas, dated October 2, 1967, declaring:
"* * * [that] North American * * * is insolvent; the Insurance Commissioner [of Arkansas] should be appointed receiver of the defendant to take charge of its property and assets, to rehabilitate the defendant and conduct its business affairs, and to take such steps toward removal of the causes and conditions which have made rehabilitation necessary; * * *"
Additionally, Glens Falls would show that, pursuant to F.S. 1967, sections 631.051(1), (6) and 631.021(4), F.S.A., the Circuit Court in and for Leon County entered an order dated October 5, 1967, granting a petition of the Insurance Commissioner of the State of Florida to adjudge North American insolvent and to authorize the establishment of such company so that its assets within Florida could be preserved.
Section 631.051
"The commissioner may apply to the court for an order appointing him as receiver of and directing him to rehabilitate a domestic insurer upon one or more of the following grounds. That the insurer:
"(1) Is impaired or insolvent;"
* * * * * *
"(6) Is found by the commissioner to be in such condition that further transaction of business by it will be hazardous to its policyholder, creditors, or stockholders;"[1]
Section 631.021
"(4) Delinquency proceedings pursuant to this chapter shall constitute the sole and exclusive method of liquidating, rehabilitating, reorganizing or conserving an insurer, and no court shall entertain a petition for the commencement of such proceedings unless the same has been filed in the name of the state on the relation of the commissioner."
Since both of these hearings determine that North American was insolvent more than one year after the accident, Glen Falls asserts that they should be conclusive of the fact that North American did not become insolvent within the time period prescribed by F.S. 1967, section 627.0851(2), (3), F.S.A., and that therefore defendant should be denied recovery. We do not agree. An examination of both the Arkansas and Florida court orders reveals that neither purported to determine when insolvency initially occurred, but merely recognized that as of the date of hearing *702 North American was insolvent. For the purposes of Chapter 631, all that is required in order to legitimize the setting up of a receivership is that the insurance company be insolvent at that time, the actual date of insolvency being irrelevant.
In the trial court decision, Judge Gonzalez states:
"We hold, therefore, that where the insurance carrier of a third-party tort-feasor was declared `insolvent' by an authorized authorized (sic) agency of government acting pursuant to law (more than one (1) year following the commission of the alleged tort) a party may not recover under his uninsured motorist coverage even though the facts giving rise to the finding of insolvency occurred in whole or in part within the one (1) year period."
We feel compelled to take issue with this holding. For purposes of the uninsured motorist provisions, a determination of the actual date of insolvency is crucial, because coverage depends on that date not being more than one year from the date of the accident. It is quite conceivable that an insurance company might become insolvent considerably in advance of a State Court pronouncement of insolvency determined upon the petition of the insurance commissioner.
Therefore, it is unrealistic to hold that a finding of insolvency in the Florida Insurance Commissioner's proceeding, primarily based upon a recognition of the Arkansas insolvency order, should be conclusive as applied to the Florida uninsured motorist provisions, where a showing of the date when insolvency initially occurred is the pivotal point.
Furthermore, in the Florida receivership hearing brought by the Insurance Commissioner requiring North American Guaranty Ins. Co. to show good cause why the the Insurance Commissioner should not be appointed as receiver for that company to conserve its assets in Florida, North American did not appear. From the record, it does not appear that there was any evidence produced of insolvency except that Arkansas had found the insurance company insolvent and had appointed a conservator. It can well be argued that all the Florida court did was to recognize that North American was insolvent at the time of the hearing, since Arkansas had previously determined this after hearing testimony and receiving evidence of the company's position. It cannot be said that the Florida court determined when insolvency actually occurred because there was no evidence presented on this issue, and indeed it was irrelevant, since for the purpose of setting up a receivership in Florida of the company's assets here, all that was needed was to show that the company was insolvent as of October 5, 1967, and therefore the Insurance Commissioner could proceed to act.
Summarizing this first point, the state court pronouncement at the behest of the Insurance Commissioner does not determine the date that the company did in fact become insolvent. While the company may be insolvent on the date of the adjudication, at least under the terms and purposes of F.S. 1967, chapter 631, F.S.A. this is unrealistic and not binding under the financial responsibility section where coverage depends upon the date of insolvency with reference to the date of the accident. In other words, there is no reason to believe that the insurance commissioner proceeding would not very likely be sometime beyond the actual date of insolvency.
On the second point, the lower court was of the view that a pronouncement by a state court at the instigation of the State Insurance Commissioner should be a final and determinative adjudication as to an insurance company's insolvency. This is looking to the interest of the insurance company, rather than to the insured motorist and his interest. Note the manner in which Virginia has handled this conflict of interests.
*703 State Farm Mutual Automobile Ins. Co. v. Brower, 204 Va. 887, 134 S.E.2d 277 (1964) is a case wherein an injured plaintiff recovered a judgment against the tort-feasor's insurance company, but this company became insolvent before payment. In an action against his own insurance company the court granted recovery, holding:
"* * * [T]he Virginia uninsured motorist legislation is remedial in nature, being for the purpose of protecting through their own insurers the innocent victims of irresponsible motorists. `The legislation having been enacted for the benefit of the injured parties, it is to be liberally construed so that the purpose intended may be accomplished.'"
Pennsylvania has reached a similar position: Pattani v. Keystone Ins. Co., 1967, 426 Pa. 332, 231 A.2d 402. In short, the harassment to the insurance company caused by a suit to determine the actual time of insolvency should be subordinated to the greater interest of giving a recovery to those injured through no fault of their own.
Appellee argues that the Insurance Commissioner has the sole authority to determine insolvency of an insurance company.
"Section 631.011 Definitions.
"(1) `Impairment' or `insolvency' means the capital of a stock insurer or the surplus of a mutual or reciprocal insurer, shall be deemed to be impaired and the insurer shall be deemed to be insolvent, when such insurer is not possessed of assets at least equal to all liabilities and required reserves together with its total issued and outstanding capital stock if a stock insurer, or the minimum surplus if a mutual or reciprocal insurer, required by this code to be maintained for the kind or kinds of insurance it is then authorized to transact.[2]
"Section 631.021 Jurisdiction of delinquency proceedings; venue; change of venue; exclusiveness of remedy; appeal. 
"(4) Delinquency proceedings pursuant to this chapter shall constitute the sole and exclusive method of liquidating, rehabilitating, reorganizing or conserving an insurer, and no court shall entertain a petition for the commencement of such proceedings unless the same has been filed in the name of the state on the relation of the commissioner."
Since there is no precedent in Florida on this point, new ground must be struck. To *704 dispose of appellee's reliance on 631.021(4), this statute can be narrowly construed. It has to do with delinquency proceedings involving an insurance company doing business in Florida. In fact, the whole of F.S. 1967, chapter 631, F.S.A., deals with rehabilitation and liquidation of such companies. Nothing within this statute gives the Insurance Commissioner exclusive authority to make the determination of insolvency in uninsured motorist situations. The Legislature could have so spoken, but did not. Even granting that this statute gives the Insurance Commissioner the right to select a given date on which the insurance company is indeed insolvent, so that it can be liquidated and rehabilitated as of that date, this does not necessarily establish the earliest date when the company became insolvent. This earliest date is not of consequence to the Insurance Commissioner since he is only concerned with showing that at the date of the commencement of the proceeding that the company is insolvent as a predicate for taking corrective action in the future via the rest of F.S. 1967, chapter 631, F.S.A.
The question then arises as to what definition "insolvency" should be given for purposes of F.S. 1967, section 627.0851(2), (3), F.S.A. There is nothing within the Financial Responsibility Chapter to guide us, so it must be presumed that the word is to be given its normal meaning. Insolvency has been described in varying fashions:
"`In its general and popular meaning the term (insolvency) denotes the state of one whose property and assets, when converted into money without unreasonable haste or sacrifice are insufficient to pay his debts.'" Traders & General Ins. Co. v. Davis, Tex.Civ.App., 142 S.W.2d 826, citing 32 C.J. 805.
Usual legally defined "insolvency * * is an inability of the debtor to pay his debts as they fall due, in the ordinary course of business, and this is dependent neither upon a formal adjudication, nor on an actual insufficiency of assets to meet liabilities." Strouse v. American Credit Indemnity Co., 1900, 91 Md. 244, 46 A. 328, 330.
Insolvency is not limited to judicially declared insolvency, but "must be given its usual broad meaning [of general financial responsibility], especially where another conclusion would largely defeat the purpose of a remedial statutory provision." Miller v. Union Indemnity Co., 1924, 209 App.Div. 455, 204 N.Y.S. 730, 733.
The significance of these definitions is that a formal adjudication of insolvency is not necessarily a condition precedent to a finding of actual insolvency, and that it may be established factually if at issue.
It can be contended that the appropriate meaning of insolvency is found in F.S. 1967, section 631.011, F.S.A.:
"(1) `Impairment' or `insolvency' means the capital of a stock insurer or the surplus of a mutual or reciprocal insurer, shall be deemed to be impaired and the insurer shall be deemed to be insolvent, when such insurer is not possessed of assets at least equal to all liabilities and required reserves together with its total issued and outstanding capital stock of a stock insurer, or the minimum surplus if a mutual or reciprocal insurer, required by this code to be maintained for the kind or kinds of insurance it is then authorized to transact."
We would point out, however, that this definition was intended to apply only to Chapter 631,  Rehabilitation and Liquidation of Insurance Companies, and does not appear in the Florida Uninsured Motorist provisions. It can only be presumed that the Legislature's failure to incorporate Section 631.011 into F.S. 1967, section 627.0851, F.S.A., was for the express reason that different considerations were meant to apply to the term "insolvency" in the respective statutes. Further, it could be that the Commissioner does not always *705 move promptly and on occasion will defer action in a proper effort to rescue a company for the benefit of policy holders.
In summary, it is reiterated that insolvency determination under F.S. 1967, section 627.0851, F.S.A., and insolvency determination under Chapter 631 do not serve the same purpose. Thus, the Chapter 631 proceeding is not determinative as to date of insolvency under Chapter 627.
On the third point, it is Glens Falls' contention that the court's order in the Insurance Commissioner's proceeding is conclusive upon the issue of insolvency. If this were true, then we have an example of a claimant who must be denied relief without ever having had the opportunity to present evidence or cross examine witnesses in support of his position. We find an abundance of authority which indicates this is a denial of due process. While a state may determine by what process and what procedure legal rights may be asserted and determined, it may not adopt a procedure which denies one a reasonable notice or fair opportunity to be heard. Goodrich v. Thompson, 1928, 96 Fla. 327, 118 So. 60, at 62.
In the exercise of quasi-judicial powers, administrative agencies may not deprive an individual of property rights without notice and hearing. Brill v. State, 1947, 159 Fla. 682, 32 So.2d 607.
A hearing must afford the parties full apprisal of the evidence, with opportunity to test, explain, and rebut it, and an opportunity to cross-examine witnesses and present evidence. Atlantic Coast Line R.R. Co. v. U.S. Sugar Corp., Fla.App. 1952, 59 So.2d 852.
It must be recognized that defendant was not a party to the State Insurance Commissioner's insolvency hearing. However, defendant had a substantial interest in the outcome of that determination, and in fact his whole recovery hinges on it. Therefore, in keeping with the above authorities, the defendant should have been given notice of the hearing and allowed to participate. Since that is no longer possible, the defendant should now be permitted to attempt to show that insolvency occurred within one year of the accident. To deny him either of these opportunities is to deny him due process of law.
On the fourth point, the apparent controlling consideration before Judge Gonzalez was the uncertainty, difficulty and expense. Referees in bankruptcy are able to handle insolvency proceedings against the largest corporations as a matter of course and suits in accounting are often involved. Further, whether or not these are the controlling factors is a proper subject for the Legislature to consider. If considerations of expense and litigation are imperative, the Legislature should address itself to this problem and supply shortcuts, if same are available; but we view it as the traditional right of a litigant to make demands affecting his welfare and property and to be heard in a court of law. The trial court approach is certainly more expedient and more definitive. It may be a highly desirable solution and recommended to the Legislature for consideration. But, until the Legislature determines that expediency and clarity are more important to the ends of this statute than a judicial determination of rights and interest of the parties in these types of cases, we must defer to the litigant's right to be heard. To us the obvious intent of that statute is "To give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others." Pattani v. Keystone Insurance Company, 426 Pa. 332, 231 A.2d 402 (1967). We agree with the California court that,
"The statutory objective is not attained by giving the insured person a claim against an insolvent. Our conclusion is that an insurer who becomes insolvent `denies coverage' within the meaning of [the California statute] * * * and that plaintiff here is entitled to the protection *706 afforded by the policy written by defendant with respect to uninsured motorists."
Katz v. American Motorist Ins. Co., 244 Cal. App.2d 886, 53 Cal. Rptr. 669 (1966), see also State Farm Mutual Automobile Insurance Co. v. Brower, 204 Va. 887, 134 S.E.2d 277 (Va. 1964).
As a final point, it has been suggested that recent decisions of other district courts may be in conflict with our decision in the instant case. It is our feeling that we differ only when the problems confronted in these cases are not precisely the same as the problem before this court and that we are in accord on all other points.[3]
In conclusion, the holding is and should be that litigants have a right to make an issue as to the date of insolvency and to produce and obtain an adjudication which may or may not be compatible with the insurance commissioner's.
*707 The judgment is reversed and the cause remanded for further proceedings consistent with the views here expressed.
Reversed.
REED and OWEN, JJ., concur.
NOTES
[1] Although Chapter 70-27 amends F.S. 631.051, F.S.A. to expand and delineate with specificity the grounds for rehabilitation of domestic insurers; those amendments do not have bearing on the considerations before the court.
[2] Although Chapter 70-27, changes this definition of insolvency, it broadens rather than restricts it, i.e. more corporations could be found insolvent under the standard of the new statute than under the old statute. This more liberal standard would be consistent with our assessment of the general legislative intent. Note the new definition does not extend new powers to the Commissioner, but rather broadens the scope of existing powers. The text of that statute is set out as follows, in pertinent part: "631.011 Definitions.  For the purpose of this chapter:

"(5) `Insolvency' means that all the assets of the insurer, if made immediately available, would not be sufficient to discharge all its liabilities; or that the insurer is unable to pay its debts as they become due in the usual course of business. Where the context of any provision of this code so indicates, insolvency shall also include and be defined as `impairment of surplus' as defined in subsection (3) of this section and `impairment of capital' as defined in subsection (4) of this section.
"(3) `Impairment of surplus' means that the surplus of a stock insurer, or the additional surplus of a mutual or reciprocal insurer or the additional net trust fund of a business trust insurer does not comply with the requirements of section 624.0207(3) of this code.
"(4) `Impairment of capital' means that the minimum surplus required to be maintained in section 624.0207(3) of this code has been dissipated and the insurer is not possessed of assets at least equal to all its liabilities together with its total issued and outstanding capital stock, if a stock insurer, or the minimum surplus or net trust fund required by section 624.0206, if a mutual, reciprocal or business trust insurer."
[3] We are in accord with the Second District in Insurance Company of North America v. Strauss, Fla.App. 1970, 231 So.2d 548, holding that F.S. 1967, section 627.0851, F.S.A. is a limitation on exposure of the insurance company. We confront a different issue here. We are concerned not with whether the statute imposes a time limit on the action but rather with what method is to be employed to determine when that period ends, i.e. when is a company insolvent? In Strauss the court merely reversed the trial judge's determination that the one-year provision of F.S. 1967, section 627.0851(3), F.S.A., relating to insolvency of the tort-feasor's insurer, did not impose a limitation on the time within which appellant could be liable under the policy. Their holding is similar to that in Sires v. State Fire & Casualty Company, Fla.App. 1969, 226 So.2d 875, which held that the one year limitation would apply rather than the five year statute of limitations applicable to actions on written contracts.

The question of how to determine when the insurer became insolvent is not considered in Strauss or Sires, supra. It was merely undisputed that the insurer was not adjudicated insolvent until more than one year after the accident.
In Fredel v. Southern General Insurance Company, Fla.App. 1970, 233 So.2d 451, the court affirmed summary judgment for the insurer. In that case, a Tennessee court and a Florida court both adjudicated the carrier insolvent more than one year after the accident. The insured filed an affidavit from a special deputy commissioner from the Department of Insurance and Banking in Tennessee stating that "the Department of Insurance and Banking, State of Tennessee, took the position that National Services Fire Insurance Company was insolvent as of December 1, 1967," which was within the one year period. The court felt the two adjudications by courts of competent jurisdiction more persuasive than an affidavit stating a commissioner's position, holding "The affidavit does not state that the insurer became, or was, insolvent on that date and was insufficient to withstand the motion for final summary judgment." We may or may not have reached a different decision under the facts in Fredel, but that is of no consequence because in the case at bar the court has not even considered the relevant weight of the evidence, i.e. in Fredel the Third District found that the insured's evidence of an earlier insolvency date was not sufficient while in the case at bar insured has been precluded from even introducing evidence. We agree with the Fredel dicta that the actual date of insolvency of insurance companies might be resolved by a trial court adjudicating the date on which it finds that such companies became insolvent and would reiterate that language.
"The argument is advanced that our statute does not, require a judicial determination of insolvency, but only requires that the insurer become insolvent within one year after the accident. The question of the actual time that the insurance company becomes insolvent is claimed to be a factual determination. We agree that the language of the statute might be more specific as to the determination of the time when an insurer becomes insolvent and commend this situation to the legislature for further study and possible action. (Emphasis supplied.)
"The actual date of insolvency of insurance companies might also be resolved by a trial court adjudicating the date on which it finds that such companies become insolvent in its final decree."
It might be noted also that in Fredel, supra, both parties agreed that the summary judgment would be final determination of their rights and interest, and the court made its determination in this lights.