Joseph **PORTER** and James Chatman, Plaintiffs-Respondents,

v.

**GEORGIA CASUALTY & SURETY COMPANY,** *Defendant-Appellant.*

No. 35097.

Missouri Court of Appeals, St. Louis District, Division One.

Feb. 19, 1974.

Motion for Rehearing or Transfer Denied March 8, 1974.

Application to Transfer Denied May 13, 1974.

Murphy, Kortenhof & Ely, Frank E. Strzelec, St. Louis, for defendant-appellant.

Walter S. Berkman, Eugene B. Weisman, Clayton, for plaintiffs-respondents.

SIMEONE, Judge.

This is an appeal by defendant-appellant, Georgia Casualty and Surety Company from a judgment of the circuit court of the City of St. Louis entered on December 19, 1972, granting summary judgment in favor of the plaintiffs-respondents, Joseph Porter and James Chatman, declaring that the plaintiffs have "uninsured motorist coverage under the defendant's policy" issued to James Porter on June 20, 1969.

The issue is a narrow one and the facts are not in dispute.

On June 20, 1969, Georgia Casualty and Surety Company (hereinafter Georgia Casualty) issued its combination automobile policy to plaintiff, Joseph Porter. The policy provided for uninsured motorist coverage and was in effect on December 20, 1969. On that date, Porter's vehicle, with James Chatman as a passenger, collided with a vehicle driven by Clinton Ray. Ray had a policy of insurance with an Illinois insurer, LaSalle National Insurance Company.

On March 23, 1971, the Illinois Department of Insurance commenced an examination of the books, records and affairs of LaSalle to ascertain the true financial condition of the company as of December 31, 1970. On October 7, 1971, the Illinois Director of Insurance and the Attorney General filed a complaint for liquidation and other relief in the circuit court of Cook County, alleging that LaSalle had a deficit in surplus as regards policyholders and was thus insolvent in a certain amount. On the same date, the circuit court of Cook County entered an order finding that the Director of Insurance had made a prima facie case of insolvency against LaSalle and enjoined it from the further transaction of business.

On October 20, 1971, the circuit court of Cook County ordered Arthur Andersen & Company to examine the books and records and to submit a report as to the financial status of LaSalle. Andersen made an evaluation of LaSalle's condition as of December 31, 1970, and delivered it to the court on November 24, 1971. On December 28, 1971, the court issued its order of liquidation, stating that "as a result of the examination by the Department of Insurance of the State of Illinois, by Arthur Andersen & Co., and from the evidence presented, this Court finds the Defendant, LA

SALLE NATIONAL INSURANCE COMPANY to be insolvent, and that its further transaction of business would be hazardous to its policyholders, its creditors, or to the general public." The court ordered the liquidation of the business.

As a result of the automobile collision on December 20, 1969, Porter and Chatman filed, on June 2, 1972, a petition against Georgia Casualty for declaratory judgment praying the court to declare that LaSalle became insolvent within two years after the accident.[1] Plaintiffs alleged that Georgia denied coverage under the uninsured motorist clause because the order of liquidation was entered December 28, 1971, more than two years after the accident, and which under our statute would relieve Georgia of its contractual liability.

After motion to dismiss filed by Georgia was overruled and answer filed, Porter and Chatman filed their motion for summary judgment pursuant to Rule 74.04, V.A.M. R., praying the court to enter its summary declaratory judgment that LaSalle "became insolvent on or before October 7, 1971, because the pleadings, admissions on file, together with the affidavit and report . . . show that there is no genuine issue as to any material fact. . . ."

On December 19, 1972 the trial court entered its findings of fact, conclusions of law and decree. The court found that Ray, on December 20, 1969 was protected by a policy issued by LaSalle, that LaSalle was insolvent on October 20, 1971, that LaSalle "became insolvent within two years after plaintiffs' accident . . ." that pursuant to § 379.203, RSMo, V.A.

M.S., plaintiffs are entitled to uninsured motorist protection and ordered defendant to comply with its contractual obligations.

Georgia Casualty appealed. Its sole contention is that the court erred in granting the summary judgment because plaintiffs failed to show that LaSalle became insolvent within two years of the date of the accident, December 20, 1969. In effect Georgia maintains that LaSalle did not become insolvent within two years from the date of the accident as required by § 379.-203(3).

The issue therefore to be determined in this proceeding is whether LaSalle became insolvent within two years after the accident. Georgia Casualty contends that LaSalle did not become insolvent until so declared by the circuit court of Cook County by its order of liquidation entered December 28, 1971, 8 days after two years from the date of the accident.

The construction of the phrase "becomes insolvent" urged upon us by Georgia Casualty would set the date of insolvency, for purposes of § 379.203(3) at the date of the final and formal declaration of insolvency by order of the circuit court of Cook County ordering liquidation.

The basic policy of uninsured motorist coverage "is designed to close a gap in the protection afforded the public under existing financial responsibility laws and, within fixed limits, to provide recompense to innocent persons injured by motorists who lack financial responsibility." Webb v. State Farm Mutual Automobile Ins. Co., 479 S.W.2d 148, 151 (Mo.App.1972). The statutes are to be "liberally construed to

---

1. § 379.203(2) and (3), RSMo 1969 V.A.M. S. provides:

"2. For the purpose of this coverage, the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified herein because of insolvency."

"3. An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tortfeasor *becomes insolvent within two years after such an accident.* Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder." (Emphasis added.)

accomplish their highly remedial purpose." *Webb, supra* at 151.[2]

While at first the policies provided for the definition of an uninsured automobile and the time of coverage, eventually the majority of the state legislatures required uninsured motorist coverage for a certain period of time after an accident in the event of a tortfeasor's insurer's insolvency. Our statute was enacted in 1967 and provides that uninsured motorist coverage is effective where the liability insurer of the tortfeasor becomes insolvent within two years after the accident.

Counsel's research and our own reveal no prior decision in this state which would be determinative of the issue presented; hence this cause is one of first impression.

Georgia Casualty relies on Fredel v. Southern General Insurance Company, 233 So.2d 451 (Fla.App.1970). There one Adele Fredel was involved in an accident with a third party on January 25, 1967. The third party was insured by a Tennessee insurance company authorized to do business in Florida. Her claim was unsuccessful and she sought recovery under the uninsured motorists coverage provided by the policy with her insurer, Southern General Insurance Company. Southern denied coverage and eventually sought declaratory relief. Florida's statute is similar to § 379.203(3) except that coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within *one* year after the accident. The carrier for the third party had been adjudicated insolvent by a Tennessee court a year and a half after the accident, and by a Florida court at about the same time. Both adjudications

were more than one year after the accident. The insured, Fredel, relied on the "position" taken by the Department of Insurance of Tennessee that the Tennessee company was insolvent as of December 31, 1967 (within one year of the accident.)

The Florida District Court of Appeals agreed that the language of the statute might be more specific, but held that, under these facts, where two adjudications of the insolvency of the carrier had been made more than one year after the accident by courts of competent jurisdiction, and there was only an affidavit that the insurance department of Tennessee "took the position" that the insurer was insolvent within one year, and which did not state that the carrier was, the affidavit was insufficient to withstand the insurer's motion for summary judgment.

We do not believe that *Fredel, supra*, is dispositive of the issues presented.

In a later decision, Bartholomew v. Glens Falls Insurance Group, 241 So.2d 698 (Fla.App.1970), Glens Falls sought a declaration of its rights in conjunction with its uninsured motorist insurance contract with the defendant Bartholomew. The trial court granted summary judgment to the insurer on the basis that the tortfeasor's insurance carrier was declared to be insolvent by an Arkansas court and by the Florida court more than one year after the accident. The trial court held that the pronouncement of insolvency by the court at the instigation of the insurance commissioner is the final determinative adjudication as to insolvency. The trial court reasoned that otherwise uncertainty and endless litigation would result and insurance

2. "The increase in the number of automobiles on the country's highways after World War II brought about a corresponding increase in the number of traffic victims. In turn, many of the injured were victims of negligent and financially irresponsible motorists, affording little or no source of compensation. By the early 1950's, considerable public sentiment and political pressure were brought to bear for legislative or contractual schemes to provide a source of compensation. . . . Rep-resentatives of private insurance companies came up with a remedy to the problem . . . by offering to introduce a new type of insurance coverage which would indemnify an insured for injuries caused by a negligent uninsured motorist." Ciano, Uninsured Motorist Coverage, 21 Clev.St.L.Rev. 65 (1972). For the development and history of the policy provisions and legislative enactments see Ciano, *supra*, and Widiss, A Guide to Uninsured Motorist Coverage (1973 Supp.).

companies would be the subject of vast and expensive accounting procedures to determine when the company became insolvent.

The Fourth District of the Court of Appeals reversed. The appellate court held inter alia, that a formal adjudication of insolvency is not necessarily a condition precedent to a finding of actual insolvency and that it may be established factually. 241 So.2d at 704. The court further held that the obvious intent of the statute is " '[t]o give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways suffer grave injuries through the negligent use of those highways by others.' Pattani v. Keystone Insurance Company, 426 Pa. 332, 231 A.2d 402 (1967)." And if uncertainty or difficulty arises, the court held, these are proper subjects for the legislature to consider. The court reversed the summary judgment to permit the issue of the date of insolvency to be determined by proof.[3]

If the appellant-Georgia Casualty's position would be adopted, present conditions of overcrowded dockets and delays may well affect the timing of a formal adjudication resulting in a declaration of insolvency more than two years after the accident, and the timing would be beyond the control of the parties.

■ We therefore conclude that the order of liquidation entered by the circuit court on December 28, 1971 is not determinative of the date when LaSalle became insolvent. Rather, we believe that the determination of insolvency is a factual question to be determined on a factual case by case basis and that LaSalle became insolvent prior to December 20, 1971. On March 23, 1971, the Insurance Director instigated an examination of the company; on October 7, 1971, the complaint for liquidation was filed; on the same date the trial court in Illinois found a prima facie

case of insolvency and restrained the company from the further transaction of business; on October 20, 1971, the accounting firm was ordered to evaluate the company; on November 15, 1971 the accounting firm completed its report and delivered it to the Circuit Court on November 24, 1971, and based upon "the examination by the Department of Insurance of the State of Illinois, by Arthur Andersen & Co., and from the evidence presented, this Court finds [LaSalle] to be insolvent. . . ." We believe it to be clear from this record that LaSalle became insolvent within two years from the date of the accident, December 20, 1969.

We have examined the other decisions relied upon by the appellant which we do not believe are dispositive of the particular issues presented here.

The final question for determination is whether or not, on the basis of our holding, summary judgment by the trial court was appropriate.

■ Civil Rule 74.04 provides for summary judgment if the pleadings, depositions, and admissions on file, plus affidavits, if any, show that there is no genuine issue as to any fact and that the moving party is entitled to a judgment as a matter of law. The burden is upon movant to show by unassailable proof, i. e., proof leaving no room for controversy, that there is no genuine issue as to a material fact, and that he is entitled to judgment as a matter of law. Weber v. Les Petite Academies, Inc., 490 S.W.2d 278, 279 (Mo.App. 1973) ; Brown v. Prudential Insurance Company of America, 375 S.W.2d 623, 629 (Mo.App.1964) ; Pallme v. Rott, 440 S.W. 2d 184, 197 (Mo.App.1969). When appeal of a summary judgment is made, the duty of an appellate court is to review the record in the light most favorable to the party against whom the motion was sustained and to determine if a genuine issue

---

3. See also McKee v. Government Employees Insurance Company, 245 So.2d 284 (Fla.App. 1971) ; State Farm Mutual Automobile Insurance Company v. Fass, 243 So.2d 223 (Fla.App.1971).

of fact exists. O'Leary v. McCarty, 492 S.W.2d 124, 129 (Mo.App.1973); Stanturf v. Sipes, 447 S.W.2d 558, 561 (Mo.1969).

Having reviewed the record, we find that no genuine issue of material fact exists, and that the trial court did not err in reaching the conclusion that the plaintiffs are entitled to uninsured motorist protection and in granting summary judgment to the plaintiffs.

■ Under the facts of this case neither party disputes the fact that LaSalle was insolvent on December 28, 1971, the date of the Illinois adjudication of insolvency. The evidence upon which that adjudication was based was before the Illinois court on November 24, 1971, and on October 7, 1971, the Illinois court found a prima facie case of insolvency and restrained the company from the further transaction of business. Under § 379.203(2), an uninsured motor vehicle is deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured because of insolvency. From October 7, 1971 forward LaSalle by virtue of the court's restraining order was unable to make payment. That restraining order was based upon a prima facie finding of insolvency later confirmed by the final adjudication of the Illinois court. The inability of LaSalle to make payments was under the operative language of the statute the result of its insolvency. On the record here that inability to make payment commenced no later than October 7, 1971 as a matter of law, and therefore summary judgment should be affirmed.

The judgment is affirmed.

DOWD, C. J., and KELLY, J., concur.